IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

David A. Robison,                    :

              Plaintiff,        :    Case No. 2:15-cv-944

   v.                              :    JUDGE JAMES L. GRAHAM
                             Magistrate Judge Kemp
Woody Coey, et al.,                  :

              Defendants.       :


<u>REPORT AND RECOMMENDATION</u>

Plaintiff David A. Robison, an inmate at the Chillicothe Correctional Institution, filed this action under 42 U.S.C. §1983 alleging violations of his First and Fourteenth Amendment rights as a result of the conduct of defendants Woody Coey, Cody Posey, Brent Cruse, Corby Free, Roger Wilson, and Gary Mohr. The defendants have filed a motion to dismiss and the motion has been fully briefed. For the following reasons, the Court will recommend that the motion to dismiss be granted in part and denied in part.

I. <u>Background</u>

Mr. Robison's complaint is 23 pages long and extremely detailed, alleging virtually the same facts repeatedly as they relate to each defendant. The factual allegations of the complaint can be condensed and summarized as follows. Mr. Robison worked as a clerk in the Ohio Penal Industries paint shop. On August 1, 2014, Mr. Coey, the Industry Manager for OPI, created a non-ODRC sanctioned form titled "Loss of Production/Overtime Monthly Tracking" and directed Mr. Robison to track the "staff hours, lack of staff hours and the overtime hours of staff" on a daily basis and to turn these forms in on a monthly basis. Mr. Robison was not comfortable with this request

because he believed it was prohibited by ODRC policy.  He raised his concerns with his supervisor, Mr. Blakeman.  After this discussion, Mr. Blakeman took the form from Mr. Robison to keep until Mr. Coey requested it.

On September 2, 2014, Mr. Coey's clerk came to collect the August form.  Mr. Blakeman then instructed Mr. Robison to complete the form and provide it to the clerk.  Mr. Robison followed Mr. Blakeman's instruction.  On September 17, 2014, Mr. Cruse, the OPI superintendent, met with Mr Robison and Mr. Blakeman in order to demote Mr. Robison from his assigned job, drop his pay grade, and reassign him to the sanding bay because he did not complete the August tracking form and because he questioned "whether it was proper for him to track the hours of OPI staff members."  Mr. Robison and Mr. Blakeman explained to Mr. Cruse that he had turned the form in as requested but that he had valid concerns about the form.  In response, Mr. Cruse decided to delay the demotion until he had a chance to speak with Mr. Coey.  Mr. Coey chose to drop the issue at this time. However, Mr. Coey and Mr. Cruse threatened retaliation the next time Mr. Robison failed to follow orders.

On September 26, 2014, Mr. Posey began filling in for Mr. Blakeman who was on a three-week vacation.  On September 30, and October 16, 2014, Mr. Posey broke into Mr. Blakeman's personal locker.  When Mr. Blakeman returned from his vacation, he discovered that his lock was missing and filed an incident report.  Subsequently, Mr. Blakeman questioned Mr. Robison about the missing lock to see if he knew anything about it.  Mr. Robison explained that he had gone to the paint shop office one day to make copies and found Mr. Posey sitting at his desk with a broken combination lock.  When Mr. Robison questioned him, Mr. Posey stated that he had broken Mr. Blakeman's lock.  Mr. Posey threatened Mr. Robison not to tell on him.  Mr. Blakeman filed a

-2-

second incident report which included this information from Mr. Robison.

On October 23, 2014, Mr. Coey received a copy of the second incident report and called Mr. Robison to his office to question him about Mr. Posey and the lock. As a result of this meeting, Mr. Coey placed Mr. Robison in segregation for eight days. On November 3, 2014, Mr. Coey wrote a "completely false Conduct Report" accusing Mr. Robison and another inmate of fabricating the lock story to "intentionally cause conflict between two OPI employees." This resulted in Mr. Robison's being removed from his job as well as his loss of good days, resulting in a one-year delay in his parole eligibility.

Mr. Coey conducted his own investigation that did not follow ODRC policy and directed Mr. Blakeman to write a conduct report against Mr. Robison. When Mr. Blakeman refused to write the conduct report, Mr. Coey wrote the report himself as a way to "cover[]" for Mr. Posey because Mr. Coey had a "vested" interest in making sure Mr. Posey remained in his position with OPI.

Mr. Posey told Mr. Robison about his use of force against other inmates and Mr. Robison feared that Mr. Posey would cause him bodily harm. Mr. Cruse lied to his supervisor about whether Mr. Coey had asked Mr. Robison to track the hours of OPI staff members.

Mr. Robison filed an informal complaint with Mr. Free, the institutional inspector at CCI, asserting claims of retaliation, wrongful termination, and denial of procedural due process against Mr. Coey and Mr. Cruse. Mr. Free informed Mr. Robison that such complaints were to be directed to the deputy of special services, thereby delaying the grievance process. Mr. Robison directed his informal complaint to the deputy and was told that allegations of retaliation are claims of inappropriate supervision and must be directed to the institutional inspector.

Mr. Robison submitted a notification of grievance form to Mr. Free explaining the "criminal activities of Defendant Posey" and requested that Mr. Free report this information to the proper authorities.  Mr. Free did not conduct an investigation as requested, but told Mr. Robison in his grievance disposition that he had investigated the grievance.  Mr. Free concluded that Mr. Robison was guilty of lying to the staff and told Mr. Robison that hearing officer's decisions are not appealable.

Mr. Robison filed an appeal with Mr. Wilson, the chief inspector of ODRC, requesting that Mr. Wilson investigate the criminal activities as reported by Mr. Robison.  Instead, Mr. Wilson affirmed Mr. Free's decision without ever reviewing the false conduct report written by Mr. Coey.

Mr. Mohr, as director of the ODRC has allowed policies to exist which have had the impact of denying Mr. Robison's right to procedural due process.  The next to last paragraph of the body of Mr. Robison's complaint more succinctly states his due process claim as follows:

> In the instant case, the Plaintiff was written a false Conduct Report.  The Conduct Report was then sent to the Hearing Officer and the Plaintiff was called into his office.  The Plaintiff was asked how do you plead.  The Plaintiff pleads, NOT GUILTY.  The Hearing Officer tells the Plaintiff that he was accused of "fabricating a story to intentionally cause conflict between two OPI staff members." thus lying to staff. The Hearing Officer decided that he will hear the Conduct Report and the Plaintiff was "FOUND" Guilty. The Plaintiff was never given the opportunity to call witnesses or present his case as to why he plead not guilty.  Now the Plaintiff has NO right to Appeal or file a Grievance.  The Plaintiff was never given any Procedural Due Process and the result of him being "FOUND" Guilty is that he lost his job, lost his "good-days" and thus his Parole Eligibility date is delayed considerably.

## II.  Legal Standard

A motion to dismiss under Fed. R. Civ. P 12(b)(6) should not

be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). All well-pleaded factual allegations must be taken as true and be construed most favorably toward the non-movant. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009). Rule 8(a) admonishes the Court to look only for a "short and plain statement of the claim," however, rather than requiring the pleading of specific facts. Erickson v. Pardus, 551 U.S. 89 (2007).

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978). Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Wright & Miller, Federal Practice and Procedure § 1356 (1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. Id.

On the other hand, more than bare assertions of legal conclusions is required to satisfy the notice pleading standard. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Id. (emphasis in original, quotes omitted).

-5-

"[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading.  A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim.  But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."

Id. It is with these standards in mind that the motion to dismiss will be decided.

### III.  Analysis

#### A.  The Motion to Dismiss

All the defendants have moved to dismiss Mr. Robison's claims against them in their official capacities because, in that capacity, they are not considered persons subject to suit under §1983.

Turning to the defendants individually, Mr. Coey contends that the claims he violated Mr. Robison's First and Fourteenth Amendment rights by writing a false conduct report, failing to follow ODRC policy in conducting an investigation, and retaliating against him by causing him to lose his prison job cannot succeed for several reasons.  First, he contends that Mr. Robison has no constitutional right to a prison job so no §1983 claim arises from the termination of his employment.  Further, Mr. Coey argues that the failure of prison officials to follow internal regulations is not a constitutional violation.  Additionally, he asserts that the issuance of a false conduct report does not create a constitutional claim unless the report punishes an inmate for exercising his constitutional rights.  Moreover, Mr. Coey notes that Mr. Robison was convicted of the charges alleged in the conduct report, underscoring the validity of the report.

Mr. Posey contends that while Mr. Robison alleges that Mr. Posey retaliated against him for implicating him in criminal activity, he "never identifies any constitutional right deserving

-6-

of protection." Mr. Posey explains that "there is no constitutional right for an inmate to claim a prison employee broke into another prison employee's locker, broke the employee's lock, and then threw the lock away." Further, he contends that to the extent Mr. Robison claims that Mr. Posey threatened him, there is no constitutional right to be free from threats. Similarly, Mr. Posey asserts that any claim that he lied to his supervisors or conspired with Mr. Coey to write a false conduct report does not implicate Mr. Robison's constitutional rights.

Mr. Cruse argues that, to the extent Mr. Robison contends that he impeded the progress of Mr. Robison's grievance, Mr. Robison has no constitutional right to an effective prison grievance procedure. Further, he asserts that, to the extent Mr. Robison contends that Mr. Cruse was aware that ODRC policy was not being followed, the failure of prison officials to follow internal policies does not create a constitutional violation. Defendants make similar arguments relating to Mr. Free and Mr. Wilson. Mr. Mohr contends that he cannot be held liable in his supervisory role.

In response, Mr. Robison explains that his complaint "is based on three simple constitutionally protected issues; 1. Retaliation 2. Due Process and 3. Liberty Interest." With respect to the issue of retaliation, Mr. Robison characterizes his claim as arising from the fact that he "was punished for exercising his constitutional right when he orally and in writing gave his statement and opinion on what the Plaintiff saw and was asked to do when the Plaintiff discovered the criminal of Defendant Posey." Mr. Robison argues that "[t]he Defendants would have this Court to believe that the Plaintiff was complaining about his job loss and because of the complaining, a false conduct report was written against the Plaintiff in retaliation." He contends that his job loss is not the issue

here, although it "created a Liberty Interest for the Plaintiff, which is constitutionally protected." Finally, he explains, "[t]he Plaintiff simply made a complaint to his direct supervisor that he was asked to do something that the Plaintiff knew was wrong and had the proof to legitimize his complaint but was never given the opportunity to prove his allegations were in fact true."

With respect to his Fourteenth Amendment claim, Mr. Robison argues that he was not given any notice of the hearing that resulted in the loss of his good time credits. He explains that he was called to the hearing officer's office and told that a conduct report had been written by Mr. Coey accusing Mr. Robison of lying. The hearing officer spoke with Mr. Coey and then told Mr. Robison that, although he did not believe he was guilty of lying, because Mr. Coey wanted Mr. Robison "out of OPI," the hearing officer had to find Mr. Robison guilty. This, in Mr. Robison's view allowed Mr. Coey both to write a false disciplinary report and then to direct the outcome of the disciplinary hearing. The hearing officer declined to refer the conduct report to the Rules Infraction Board, even though prison policy requires such action when the potential penalty is the loss of "good days." Mr. Robison contends that the change in Administrative Rules which prohibits the appeal of a hearing officer's decision deprives him of his due process rights because its allows the hearing officer to be "the judge, jury and executioner of the Plaintiffs (sic) fate."

With respect to his alleged "liberty interest," Mr. Robison contends that he has a liberty interest in his good time credit and that this credit can only be taken away by the Rules Infraction Board, not a single hearing officer.

In reply, defendants reiterate that Mr. Robison has not identified any constitutionally-protected right and that he was

not disciplined with the loss of good time credit.  Further, they
contend that, because Mr. Robison was convicted of the charges
alleged in the conduct report, he cannot claim retaliation.
Finally, they assert that their alleged failure to follow prison
policies when determining violations of inmate rules of conduct
is not a constitutional violation.

Mr. Robison filed a sur-reply in which he provides some
further clarification of his claims.  In response to the
defendants' assertion that he has no right to accuse an ODRC
employee of breaking into another employee's locker, he explains:

> Where the constitutionality comes into play is when the
> Plaintiff was retaliated against for giving his
> statement of what Defendant Posey had asked the
> Plaintiff to do when the Plaintiff stumbled upon
> Defendant Posey's criminal activity.

Further, he states:

> This suit is not about the loss of a mere job.  This
> claim is about an ordinary inmate doing his time for
> the crime he committed while discovering the criminal
> activities of a State worker.  The Plaintiff blew the
> whistle on that employee and was retaliated against for
> simply telling the truth.  This retaliation caused the
> Plaintiff to lose his vocational and training program.
> This vocational and training program allowed the
> Plaintiff to earn good-days for the Plaintiffs
> participation.  These good-days allow the Plaintiff to
> be eligible to see the Parole Board sooner than his
> original date.  The loss of these good-days will cause
> the Plaintiff denied his liberty and freedom.

### B.  Official Capacity Claims

Initially, the defendants all assert that the claims against
them in their official capacities must be dismissed.  This is so,
they contend, because officials acting in their official capacity
are not persons under §1983.  Although the defendants do not
assert their argument in terms of the Eleventh Amendment, that
Amendment clearly provides the basis for their argument.

"To state a claim under §1983, a plaintiff must allege the

violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Salehpour v. University of Tennessee, 159 F.3d 199, 206 (6th Cir. 1998) (internal quotations and citations omitted).  A plaintiff seeking relief under §1983 may bring a claim against a public official in the official's individual or official capacity. Individual-capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  In contrast, an official-capacity claim is "another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

     The Eleventh Amendment to the United States Constitution "bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." Grinter, 532 F.3d at 572 (citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989); additional citations omitted).  This immunity extends to claims against individuals sued in their official capacity to the extent that those claims seek monetary damages.  Barker v. Goodrich, 649 F.3d 428, 433 (6th Cir. 2011), reh'q denied (Sept. 12, 2011); see also McCormick v. Miami Univ., 693 F.3d 654, 662 (6th Cir. 2012).  Ohio has not waived its sovereign immunity or consented to being sued in federal court.  See Mixon v. State of Ohio, 193 F.3d 389, 397 (6th Cir. 1999); see also Barker, 649 F.3d at 432 ("The burden of establishing Eleventh Amendment immunity lies with the state, and the defense is waived if it is not raised.") (citations omitted).  Furthermore, section 1983 has not abrogated that immunity.  See Campbell v. Hamilton Cnty., 23 F. App'x 318, 327 (6th Cir. 2001) (quoting Quern v. Jordan, 440

U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)). Accordingly, because the claims at issue here are claims for monetary damages, claims against defendants in their official capacities are barred by the Eleventh Amendment.

In his complaint, Mr. Robison makes clear that he filed this lawsuit against each defendant in his "personal and official capacity." Consequently, Mr. Robison's claims for monetary relief against defendants in their official capacities must be dismissed under the Eleventh Amendment. Defendants do not, however, have Eleventh Amendment immunity with respect to Mr. Robison's claims against them in their individual capacities. The Court now turns to those claims.

C. <u>Retaliation Claim</u>

Despite its length and detail, Mr. Robison's complaint is less than clear regarding certain specifics of his retaliation claim. On one hand, it appears that he is suggesting that he was retaliated against for questioning the appropriateness of Mr. Coey's request that he monitor the hours of staff members. On the other hand, it seems that the specific activity he is claiming retaliation for is his reporting Mr. Posey's alleged criminal activity to Mr. Blakeman in response to Mr. Blakeman's questioning. This second interpretation seems more consistent with the explanations provided by Mr. Robison in his briefing. However, Mr. Robison does state in the complaint, very specifically with respect to Mr. Coey and less specifically with respect to other defendants, that he was retaliated against for questioning the tracking of staff hours.

Further, the complaint is equally as convoluted as to the specific form of retaliation Mr. Robison alleges. On one hand, it seems clear that he is claiming that the retaliation took the form of a false conduct report orchestrated by Mr. Coey to retain favor with Mr. Posey and that this false report resulted in Mr.

-11-

Robison's loss of his job and good time credit and ultimately delayed his parole eligibility.  At the same time, there is some indication from the language of the complaint that Mr. Robison views the retaliation as a continuum of activity starting with a request that he track staff hours and continuing through the alleged denial of his due process rights in connection with his pursuit of a grievance relating to the alleged retaliation. According to Mr. Robison's summary timeline attached to the complaint, the entire span of events occurred between August 1, 2014 and January 26, 2015.

Perhaps because Mr. Robison's allegations can be fairly characterized as providing repetitive detail to the point of confusion, the defendants do not even address the elements of a retaliation claim in their motion to dismiss, let alone explain how Mr. Robison has failed to allege them.  They do, however, acknowledge in their motion, that "a prison official can only be held liable for issuing a false conduct report if the report punishes an inmate for exercising his constitutional rights." See Motion to Dismiss (Doc. 6), p. 5.  From both the language of his complaint and the explanations in his briefs, it seems to the Court that this is precisely the claim Mr. Robison is attempting to make.

There is no question that retaliation for the exercise of constitutional rights is itself a violation of the Constitution. To state a retaliation claim, a plaintiff must allege three elements: (1) that he or she was engaged in protected conduct; (2) an adverse action was taken against him or her that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.  Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).  Retaliation claims must include a "chronology of events from which retaliation may

plausibly be inferred." Ishaaq v. Compton, 900 F.Supp. 935 (W.D. Tenn. 1995) (quoting Cain v. Lane, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988)).

Turning to the first element of protected conduct, certainly Mr. Robison has not asserted a more typical First Amendment retaliation claim. That is, he is not contending that he filed a grievance or lawsuit and was retaliated against as a result. Rather, Mr. Robison's claim, on one hand, is that he gave truthful information to his supervisor, Mr. Blakeman, during Mr. Blakeman's investigation of the locker incident and that he was retaliated against for these statements. In short, at least in part, Mr. Robison alleges a First Amendment right to respond truthfully to questioning in connection with an investigation undertaken by his supervisor.

The Court of Appeals has acknowledged a prisoner's right to cooperate in an internal prison investigation. See Griffin v. Berghuis, 563 Fed.Appx. 411, 421 (6th Cir. 2014). In Griffin, the Sixth Circuit relied on Cornell v. Woods, 69 F.3d 1383, 1390 (8th Cir. 1995), in reversing a summary judgment finding of qualified immunity in response to a retaliation claim. In Cornell, the Eighth Circuit explained:

> We believe it to be self evident that ordinary citizens enjoy a constitutional privilege to freely participate in government investigations.
>
> The right to respond to a prison investigator's inquiries is not inconsistent with a person's status as a prisoner or with the legitimate penological objectives of the corrections system. To the contrary, we agree with the district court that truthfully answering questions concerning a misconduct investigation against a correctional officer is "undoubtedly quite consistent with legitimate penological objectives." Consequently, we conclude under the facts of this case that Cornell's activity implicated his rights under the First Amendment.

-13-

...

> It seems elementary to us that a prisoner retains a
> First Amendment right to respond to questions posed to
> him by a prison investigator.

<u>Cornell</u>, 69 F.3d at 1388, 1390.

Additionally, to the extent that Mr. Robison argues that he was retaliated against for raising concerns with his supervisor Mr. Blakeman regarding Mr. Coey's request to track staff's hours, this may be considered protected conduct as well.  The Court of Appeals has noted that "[t]he Supreme Court has made it clear that prison inmates retain all First Amendment rights not incompatible with their status as prisoners, 'or with the legitimate penological objectives of the corrections system.'" <u>Jones v. Caruso</u>, 569 F.3d 258, 267 (6th Cir. 2009), quoting <u>Pell v. Procunier</u>, 417 U.S. 817, 832 (1974).  Consequently, as evidenced above, courts have recognized that an inmate's exercise of First Amendment rights is not limited solely to filing grievances or accessing the courts.  Rather, courts have acknowledged that prisoners "retain, in a general sense, a right to criticize prison officials," <u>Freeman v. Texas Dep't of Criminal Justice</u>, 369 F.3d 854, 864 (5th Cir. 2004), and "a prisoner's oral and written complaints to a warden about the misconduct of the prisoner's job supervisor are protected speech under the First Amendment." <u>Davis v. Straub</u>, 2009 WL 4908433 (W.D. Mich. Dec. 11, 2009), citing <u>King v. Ditter</u>, 432 F.Supp.2d 813, 818-19 (W.D. Wis. 2006).  An inmate's questions to his supervisor regarding his participation in an activity he believed to be prohibited seems reasonably to fall within these parameters.

With respect to the second element of a retaliation claim, adverse action, Mr. Robison alleges that Mr. Coey wrote a false conduct report against him in order to remain in Mr. Posey's good

graces, and that, as a result, Mr. Robison lost his job and his ability to earn good time credits.  It appears from the complaint that this false conduct report related only to his statements regarding Mr. Posey's alleged criminal conduct.  The complaint explains that, in response to his concerns about tracking staff members, Mr. Coey and Mr. Cruse did not take any action.  For example, Mr. Robison states that, "[w]hen Defendants Coey and Cruse realized that the Plaintiffs direct supervisor, Mr. Blakeman was not going to back down on the fact that Plaintiff did nothing wrong, Defendants Coey and Cruse decided not to demote the Plaintiff while making threats of retaliation the "next" time the Plaintiff did not follow direct orders." <u>See</u> Complaint (Doc. 3), p. 12.  Based on this statement, the Court concludes that Mr. Robison has not asserted any adverse action arising from the statements of concern he made to his supervisor regarding tracking staff hours.  At most, he has alleged a threat of some undefined future retaliation which would be made in response to his failure to follow some unspecified orders.  This statement, without more, is insufficient to allege an adverse action sufficient to support a retaliation claim.  <u>See</u>, <u>e.g.</u>, <u>Thaddeus-X</u>, 175 F.3d at 398 ("certain threats ... are so de minimis that they do not rise to the level of being constitutional violations...").  Consequently, the Court will consider the adverse action element of Mr. Robison's retaliation claim only as it relates to the statements he made in connection with Mr. Blakeman's investigation regarding Mr. Posey's alleged criminal activity.

Because the defendants do not analyze Mr. Robison's claim within the established retaliation framework, they do not directly address the issues of whether the issuance of a false conduct report or Mr. Robison's loss of his prison job constitute adverse action.  The focus of their argument appears to be that

because Mr. Robison was found guilty of the alleged misconduct, he has no claim for retaliation and that he has no constitutionally-protected right to a prison job.  Defendants' arguments on this point are not persuasive.

Charging an inmate with a major misconduct violation has been found by the Court of Appeals to be sufficiently adverse conduct to "deter a person of ordinary firmness from the exercise of the right at stake," because conviction of such a violation could result in the prisoner's segregation or loss of good time credits.  Carter v. Dolce, 647 F.Supp.2d 826, 834-835 (E.D. Mich. 2009), quoting Thaddeus-X at 396; see also Brown v. Crowley, 312 F.3d 782, 789 (6th Cir. 2002); King v. Zamiara, 150 Fed. Appx. 485, 494 (6th Cir. 2005).  More specifically, the filing of false disciplinary reports has been found to be an adverse action. Loyde v. Jenkins, 2015 WL 3645515 (M.D. Tenn. June 10, 2015).

Further, while generally a prisoner has no constitutional right to prison employment or a particular prison job,  Jewell v. Leroux, 20 Fed.Appx. 375, 377 (6th Cir. 2001), citing Newsom v. Norris, 888 F.2d 371, 374 (6th Cir. 1989), the Court of Appeals has suggested that, "in the context of a retaliation claim, termination of prison employment may constitute adverse action." Walker v. Brewer, 2014 WL 1117835 (W.D. Mich. March 20, 2014), citing Pasley v. Conerly, 345 Fed.Appx. 981 (6th Cir. 2009); Dobbins v. Craycraft, 423 Fed. Appx. 550 (6th Cir. 2011). Consequently, the Court finds that Mr. Robison has sufficiently pled the second element of a retaliation claim.

The third element of a retaliation claim, that the adverse action was taken because of the protected conduct, is a causation inquiry focusing on the defendants' motive.  Thomas v. Eby, 481 F.3d 434, 441 (6th Cir. 2007).  Defendants contend that the fact that Mr. Robison was found guilty of the alleged misconduct by a hearing officer bars his retaliation claim.  However, here Mr.

-16-

Robison specifically contends that the hearing officer did not afford him procedural safeguards and was not acting as a neutral factfinder but found him guilty solely (and even admittedly) without evidence and at Mr. Coey's instruction who, in turn, was acting at Mr. Posey's behest.  The Court finds that these allegations, at least at the pleading stage, are sufficient to satisfy Mr. Robison's burden as to the third element of his retaliation claim.

To summarize, Mr. Robison has stated a claim for retaliation based on the following allegations.  He provided statements to his supervisor Mr. Blakeman regarding Mr. Posey's alleged criminal activity in connection with Mr. Blakeman's investigation regarding the break-in to his locker.  As a result, Mr. Coey prepared a false conduct report against Mr. Robison in conspiracy with Mr. Posey which then caused Mr. Robison to lose his job and good time credits.  Mr. Coey and Mr. Posey conspired to have Mr. Coey write the false conduct report because Mr. Robison had implicated Mr. Posey in Mr. Blakeman's investigation.  Beyond these specific allegations and these specific defendants, Mr. Robison has not stated a retaliation claim.

With respect to Mr. Cruse, at best Mr. Robison alleges his knowledge of Mr. Coey's writing of a false conduct report against Mr. Robison and the fact that ODRC policy was not being followed.  Mr. Robison specifically states that Mr. Cruse declined to write the report.  Similarly, Mr. Robison has not alleged the involvement of Mr. Free, Mr. Wilson, or Mr. Mohr in the act of retaliation at issue.  At most, Mr. Robison has alleged in a broad and conclusory manner that these defendants perpetuated the retaliation because they refused to provide the relief Mr. Robison sought through the grievance process.  Given that Mr. Robison has not alleged the personal involvement of these defendants in the alleged retaliation, and the most he has

-17-

alleged is their failure to act, they cannot be liable under
§1983.  Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999),
cert. denied, 530 U.S. 1264 (2000).  Consequently, the Court will
recommend that the motion to dismiss be granted as to Mr.
Robison's retaliation claim against Mr. Cruse, Mr. Free, Mr.
Wilson, and Mr. Mohr.

    D.  Procedural Due Process Claim and Liberty Interest

    Mr. Robison's due process claim is equally as multi-layered
as his retaliation claim.  On one hand, he asserts that he was
denied due process in connection with the hearing relating to the
false conduct report because the hearing officer did not allow
him the opportunity to call witnesses, instead finding him guilty
solely at Mr. Coey's request.  He also mentions in his complaint
that he did not receive advance notice of the hearing.  In his
response to the motion to dismiss, Mr. Robison explains that
Sergeant Parnell was the hearing officer.  However, Mr. Robison
does not mention Mr. Parnell by name in the complaint and has not
named him as a defendant.

    With respect to his due process claim against various named
defendants, Mr. Robison frames that claim as follows.  According
to the complaint, various defendants perpetuated the violation of
his due process rights by failing properly to address the issue
of the hearing, as well as his claims of retaliation, when he
undertook to pursue his claims through the prison grievance
system.  Mr. Robison claims that he was unable to appeal or
grieve the hearing officer's decision and that many of the
defendants failed to follow ODRC rules and policy in connection
with the grievance process.  He also contends, most specifically
with respect to his claim against Mr. Mohr, that the Ohio
Administrative Code regulations relating to the authority of
hearing officers violate his due process rights.

    Related to Mr. Robison's due process claim is what he has

identified in his response as a "liberty interest." What Mr.
Robison appears to be contending from his discussion of a liberty
interest is that the state has created such an interest in his
job and good time credits and that he cannot be deprived of these
things without written acknowledgment of the rule violation, a
hearing before the full Rules Infraction Board and a finding of
guilt by a two-thirds majority of the board. He contends that
the defendants violated Ohio Rev. Code 2967.19. Because an
inmate must establish a deprivation of a constitutionally
protected liberty interest before the Court can determine what
process is due, Wilkinson v. Austin, 545 U.S. 209, 221 (2005),
this issue as raised by Mr. Robison will be considered in the
context of his procedural due process claim. Stated another way,
"the Due Process Clause, standing alone, confers no liberty ...
interest...." Albiola v. Pugh, 2015 WL 1915289, *5 (N.D. Ohio
April 27, 2015), citing Sandin v. Conner, 515 U.S. 472, 485
(1995).

    In response to Mr. Robison's due process claims, the
defendants make essentially four cursory arguments. First, they
contend that "there was no constitutionally protected liberty
interest created as the result of Plaintiff's job loss."
Further, they argue that Mr. Robison has no "constitutionally
protected right to accuse an ODRC employee of breaking into
another ODRC employee's locker." They state, in passing, that
Mr. Robison was not disciplined with the loss of good days.
Additionally, they assert that the failure of prison officials to
follow internal policies and regulations does not rise to the
level of a constitutional violation. Finally, they contend that
Mr. Robison has no constitutional right to an effective grievance
procedure.

    Defendants are correct that, to the extent Mr. Robison may
be asserting a due process claim because of an alleged liberty

interest in his prison job, he cannot succeed.  Prisoners do not have a constitutionally protected liberty interest in prison vocational, and educational programs based on the Fourteenth Amendment.  Newsom v. Norris, 888 F.2d 371, 374 (6th Cir. 1989). Consequently, the loss of a prison job does not trigger due process protections and the Court will not consider Mr. Robison's due process claim as it relates to his loss of his prison job.

Beyond the loss of his job, however, Mr. Robison asserts that he suffered the loss of "good days."  Defendants do not address this portion of Mr. Robison's claim other than to state that this did not happen.  However, this is a factual issue which the Court will not consider in connection with the motion to dismiss.  Rather, at this point, the Court is required to regard all well-pleaded allegations as true and to construe all factual allegations in Mr. Robison's favor.  Under this standard, Mr. Robison has clearly alleged the loss of "good days" and the extension of his parole eligibility date.

However, to the extent that Mr. Robison has alleged the loss of good days and that this loss may trigger due process protections, he has not stated a claim against any named defendants arising from the alleged denial of due process during his hearing on the conduct report.  As noted, Mr. Robison has not named the hearing officer as a defendant.  Further, there is no indication in the complaint that any of the other defendants participated in the hearing process in any way.  At most, Mr. Robison has alleged Mr. Coey's participation in the hearing as a witness.  Because Mr. Robison has failed to allege the personal involvement of these defendants in the alleged due process violations in connection with his conduct hearing and the loss of his "good days," he has failed to state a claim against them under §1983.  See Heyerman v. County of Calhoun, 680 F.3d 642, 647 (6th Cir. 2012) ("[p]ersons sued in their individual

-20-

capacities under §1983 can be held liable based only on their own unconstitutional behavior"); <u>Murphy v. Grenier</u>, 406 Fed.Appx. 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability").

Given the way in which Mr. Robison has pled his due process claim as it relates to most of the named defendants, however, his focus appears to be on the way various defendants handled his informal complaints and grievances. For example, he contends that Mr. Cruse "imped[ed] the progess" of his informal complaint resolution regarding his retaliation claim. Further, Mr. Robison states that Mr. Free did not call any witnesses or conduct any investigation in response to the notification of grievance. Additionally, Mr. Robison argues that Mr. Wilson had an obligation to follow ODRC rules and policies in response to the appeal of the grievance but that he failed to report the criminal allegations raised in the grievance to the Ohio State Highway Patrol and failed to launch an investigation which would have resulted in Mr. Robison's exoneration. These allegations do not state a due process claim.

To the extent that Mr. Robison contends that these defendants mishandled his informal complaints and grievances, he has failed to state a claim because he has no constitutional right to an effective prison grievance procedure. <u>Young v. Gundy</u>, 30 Fed.Appx. 568, 569-70 (6th Cir. 2002); <u>LaFlame v. Montgomery County Sheriff's Department</u>, 3 Fed.Appx. 346, 348 (6th Cir. 2001). Additionally, responding to a grievance or participating in the grievance procedure is insufficient to trigger a prison official's liability, even when grievances alert them to unconstitutional actions. See <u>Shehee v. Luttrell</u>, 199 F.3d at 300. Further, to the extent that Mr. Robison is attempting to state a claim under §1983 by alleging that defendants' actions with respect to the grievance process

violated ODRC policies, such a claim must also fail. An alleged failure to comply with an administrative rule or policy does not rise to the level of a constitutional violation. Laney v. Farley, 501 F.3d 577, 581 n. 2 (6th Cir. 2007). Consequently, the Court will recommend that Mr. Robison's due process claim be dismissed as to Mr. Coey, Mr. Posey, Mr. Cruse, Mr. Free and Mr. Wilson.

With respect to Mr. Mohr, Mr. Robison's claim appears to be slightly different. The focus of this claim is that Mr. Mohr has allowed policies to remain in effect that resulted in the denial of Mr. Robison's procedural due process. Specifically, Mr. Robison asserts that the current Administrative Rules (in particular, O.A.C. 5120-9-07) allow the hearing officer to choose which inmate violations to refer to the Rules Infraction Board and deny inmates the ability to challenge the hearing officer's decision in this regard. This policy, Mr. Robison contends, "takes away any Procedural Due Process."

Some of Mr. Robison's language suggests that he may be attempting to challenge the constitutionality of a prison regulation. However, he is seeking damages only and has not asserted a claim for injunctive relief as would be typical if that were the case. This, coupled with the limited allegations on the issue, leads the Court to believe that his intention is to state a claim against Mr. Mohr solely on the basis of his role as the Director of the ODRC. As explained above, Mr. Robison's claims for damages against Mr. Mohr, in his official capacity, clearly are barred by the Eleventh Amendment. Further, to the extent that Mr. Robison may be attempting to state a claim for damages against Mr. Mohr in his personal capacity, Mr. Robison cannot succeed.

Allegations of direct involvement in constitutional deprivations, rather than attempts to impose liability by virtue

-22-

of the doctrine of *respondeat superior*, are necessary in order to hold an individual defendant liable under §1983. <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978). Although there are other legal claims that can properly be asserted against a supervisor simply because someone under his or her supervision may have committed a legal wrong, liability for constitutional deprivations under 42 U.S.C. §1983 cannot rest on such a claim. Consequently, unless the plaintiff's complaint affirmatively pleads the personal involvement of a defendant in the allegedly unconstitutional action about which the plaintiff is complaining, the complaint fails to state a claim against that defendant and dismissal is warranted. <u>See also Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir. 1984). This rule holds true even if the supervisor has actual knowledge of the constitutional violation as long as the supervisor did not actually participate in or encourage the wrongful behavior. <u>See Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999) (prison officials cannot be held liable under §1983 for failing to respond to grievances which alert them of unconstitutional actions); <u>see also Stewart v. Taft</u>, 235 F.Supp.2d 763, 767 (N.D. Ohio 2002) ("supervisory liability under §1983 cannot attach where the allegation of liability is based upon a mere failure to act"). In the absence of any factual allegations that Mr. Mohr played an active role in the alleged due process violations Mr. Robison suffered, Mr. Robison's allegations are insufficient to state a cause of action under §1983.

For all of these reasons, the Court will recommend that the motion to dismiss be granted as to all defendants on Mr. Robison's due process and "liberty interest" claims.

IV.  <u>Recommendation</u>

For the reasons stated above, the Court recommends that the motion to dismiss (Doc. 6) be granted in part and denied in part.

It is recommended that the motion to dismiss be denied as to Plaintiff's retaliation claim against defendants Coey and Posey in their individual capacities relating to Plaintiff's statements in connection with the investigation undertaken by Plaintiff's supervisor.  It is recommended that the motion to dismiss be granted as to all other claims and defendants.

PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).


/s/ Terence P. Kemp
United States Magistrate Judge