IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

David A. Robison,                    :

                Plaintiff,           :   Case No. 2:15-cv-944

    v.                               :   JUDGE JAMES L. GRAHAM
                                         Magistrate Judge Kemp
Woody Coey, et al.,                  :

                Defendants.          :


REPORT AND RECOMMENDATION AND ORDER

     This prisoner civil rights case is before the Court to
consider several pending motions.  These motions include
plaintiff David A. Robison's motion for a temporary restraining
order and preliminary injunction.  Defendants Woody Coey and Cody
Posey have responded to that motion by filing a motion to
dismiss.  Also, before the Court is Defendants' motion for
judgment on the pleadings.  This motion has been fully briefed.
Finally, Mr. Robison has filed a motion for sanctions and two
motions to compel discovery responses.  He also has filed a
renewed motion to compel.  For the following reasons, the Court
will recommend that the motion for a temporary restraining order
be denied and that the motion to dismiss be denied as moot.  The
Court will further recommend that the motion for judgment on the
pleadings be denied.  Finally, the Court resolves the other
motions as set forth below.

   I. Motion for Temporary Restraining Order and Preliminary
                            Injunction

     The Court first considers Mr. Robison's motion for a
temporary restraining order and preliminary injunction, which is
supported by a declaration made under penalty of perjury.  There,
he states that he is seeking such relief "to ensure that he will

be free from further retaliation as he continues to litigate this case." He asserts that, in retaliation for pursuing this action, a "NEXUS Report" was filed against him and he was placed in segregation on March 28, 2016. According to Mr. Robison's declaration, such a report is filed when an ODRC employee at an institution claims to have known a specific inmate at that institution prior to the inmate's incarceration. He does not know the identity of the employee who issued the report. He spoke to several prison officials about the alleged inaccuracy of this report and explained his belief that the report must have been issued for strictly retaliatory reasons. Certain prison officials indicated they would look into the matter. Mr. Robison states that he was released from segregation without explanation on March 31, 2016.

Based on these facts, Mr. Robison contends that he is entitled to a temporary restraining order or preliminary injunction to enjoin further acts of retaliation. He asserts that he is suffering a continuing deprivation of his constitutional rights and that this deprivation constitutes irreparable harm. He argues that irreparable harm also is demonstrated by his placement in segregation, attempts to prevent his litigating this case, and a threatened transfer to another institution to separate him from witnesses. Further, he contends that the balance of hardships weighs in his favor because, if he is denied the ability to litigate this case due to retaliation, the violation of his constitutional rights is insurmountable. Additionally, he argues that he has a strong likelihood of success on the merits because he has already stated a retaliation claim in his complaint and he is certain that, after a jury hears the testimony of his 15 witnesses, it will find in his favor. Finally, he asserts that the relief he seeks is in the public interest "because it is always in the public interest for Prison

Officials to obey the law, especially the Constitution."

In response, Defendants argue that Mr. Robison has failed to meet the four-factor test applied by courts in considering a motion for a preliminary injunction.  They explain that Mr. Robison seeks an extraordinary remedy and that his already "stringent burden" is especially difficult here because he is seeking not just to maintain the status quo during the pendency of this case but "to attain affirmative relief against non-parties."  More specifically, they argue that Mr. Robison is unable to demonstrate a likelihood of success on the merits because his civil rights claim remains pending and because his retaliation claim is based on mere speculation.  Further, they assert that Mr. Robison has not demonstrated irreparable harm because he was placed in segregation for less than a day.

In his reply in support of his motion, Mr. Robison contends that Defendants Posey and Coey filed the false NEXUS report and are doing everything in their power to prevent him from confirming this.  He asserts that he has stated a claim for retaliation relating to the issuance of this report and that he has met the requirements necessary for the Court to issue a preliminary injunction.  He confirms that his intention is to prevent "further retaliation at the hands of Defendants Woody Coey and Cody Posey" and he is not seeking to add new defendants.

These filings did not end the briefing on this issue. Defendants filed a reply in support of their motion to dismiss, again stressing that Mr. Robison has failed to demonstrate a likelihood of success on the merits.  They submitted declarations stating that they did not file the NEXUS report and do not know who did.  This prompted a reply from Mr. Robison in which he recounts the alleged dishonesty displayed by defendants in their discovery responses.  Based on this alleged dishonesty, Mr. Robison asks the Court to reject their declarations.

-3-

A.  Legal Standard

The factors to be weighed before issuing a temporary restraining order are the same as those considered for issuing a preliminary injunction.  See, e.g., Workman v. Bredesen, 486 F.3d 896, 904-05 (6th Cir. 2007).  In deciding whether to grant a preliminary injunction, the Court considers the following factors:

> (1) whether the movant has a strong likelihood of success on the merits; [2] whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction.

Hunter v. Hamilton Cnty. Bd. of Elections, 635 F.3d 219, 233 (6th Cir. 2011) (citation and internal quotation marks omitted). These are "factors to be balanced, not prerequisites that must be met." Welch v. Brown, 551 F. App'x 804, 808 (6th Cir. 2014) (quoting Washington v. Reno, 35 F.3d 1093, 1099 (6th Cir. 1994)). "'While as a general matter, none of these four factors are given controlling weight, a preliminary injunction where there is simply no likelihood of success on the merits must be reversed.'" Farnsworth v. Nationstar Mortg., LLC, 569 Fed.Appx. 421 (6th Cir. 2014), quoting Mich. State AFL-CIO v. Miller, 103 F.3d 1240, 1249 (6th Cir. 1997); see also Gonzales v. Nat'l Bd. of Med. Exam'rs, 225 F.3d 620, 625 (6th Cir. 2000)("a finding that there is simply no likelihood of success on the merits in usually fatal"). Further, "'[t]he party seeking a preliminary injunction bears a burden of justifying such relief, including showing irreparable harm and likelihood of success.'" Kentucky v. U.S. ex rel. Hagel, 759 F.3d 588, 600 (6th Cir. 2014), quoting Michigan Catholic Conf. & Catholic Family Servs. v. Burwell, 755 F.3d 372, 382 (6th Cir. 2014); see also Overstreet v. Lexington-Layette Urban Cnty. Gov't, 305 F.3d 566, 573 (6th Cir.

-4-

2002)(injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it"). Further, the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." Leary v. Daeschner, 228 F.3d 729, 739 (6th Cir. 2000).

While each of the above factors is to be balanced against each other, "[i]n the context of a First Amendment claim, the balancing of these factors is skewed toward emphasis on the first factor." Liberty Coins, LLC v. Goodman, 748 F.3d 682, 690 (6th Cir. 2014). That is, "the other three factors hinge on the first factor." Id. For example, determining where the public interest lies depends on the likelihood of success on the merits "because it is always in the public interest to prevent the violation of a party's constitutional rights." Id. (citations and internal quotation marks omitted). Additionally, the issue of harm to the parties cannot be addressed in this context without a finding of a constitutional violation. Id.

In addition to the traditional equitable factors, the Prison Litigation Reform Act imposes certain limitations on the granting of prospective relief "in any civil action with respect to prison conditions." 18 U.S.C. 3626(a)(1). Such relief "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." Id.

## B. Analysis

As the basis for his motion for a preliminary injunction, Mr. Robison asserts that he was retaliated against for his pursuit of this action. He contends that this retaliation took the form of a baseless NEXUS report issued after he served various discovery requests on Defendants and then, based on his dissatisfaction with their responses, alerted them that he was

preparing a motion to compel.  This is a retaliation claim
different from that asserted in Mr. Robison's original complaint.
That retaliation claim arose from an alleged false conduct
report.  By separate order issued June 16, 2016 (Doc. 37),
however, the Court granted him leave to amend to assert the claim
that forms the basis for his current motion.

To state a claim for relief under §1983 for a First
Amendment retaliation claim, a plaintiff must show that:

> (1) the plaintiff engaged in protected conduct;
>
> (2) an adverse action was taken against the plaintiff
> that would deter a person of ordinary firmness from
> continuing to engage in that conduct; and
>
> (3) there is a causal connection between elements one
> and two - that is, the adverse action was motivated at
> least in part by the plaintiff's protected conduct.

King v. Zamiara, 680 F.3d 686 (6th Cir. 2012), citing Thaddeus-X
v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999)(en banc). Once a
plaintiff is able to make such a showing, the defendant must
"'show by a preponderance of the evidence that it would have
reached the same decision ... even in the absence of the
protected conduct.'" Id., quoting Mt. Healthy City Sch. Dist. Bd.
of Educ. V. Doyle, 429 U.S. 274 (1977).

### 1. Likelihood of Success on the Merits

Turning first to Mr. Robison's likelihood of success on the
merits, in order to establish this factor, Mr. Robison must
demonstrate more than a mere possibility of success.  Doe v. The
Ohio State University, 136 F.Supp.3d 854, 871 (S.D. Ohio 2016),
citing Six Clinics Holding Corp. v. Cafcomp Sys., Inc., 119 F.3d
393, 402 (6th Cir. 1997).  That is, Mr. Robison must "'establish
[] a substantial likelihood or probability of success on the
merits.'"  Id., quoting Int'l Dairy Foods Ass'n v. Boggs, 622
F.3d 628, 635 (6th Cir. 2010).

-6-

In addressing this factor, Mr. Robison does not acknowledge the elements of a retaliation claim or how the facts he alleges with respect to this specific incident satisfy those elements. Rather, his entire argument on this issue is based on his belief that a false NEXUS Report was issued by Mr. Coey and Mr. Posey in retaliation for this lawsuit, that Defendants have been "less than truthful" in response to his request for admissions, and that he has already stated a claim for retaliation. Defendants contend that Mr. Robison has not demonstrated a likelihood of success on the merits because he cannot satisfy the third element of a retaliation claim. They argue that because this element involves their subjective motivations and Mr. Robison admits he is only speculating as to the motive for the issuance of the NEXUS report and his placement in segregation, he has not demonstrated a strong likelihood of success on the merits.

The Court agrees that Mr. Robison has not demonstrated a strong likelihood of success on the merits of this claim. Certainly, it is well settled that filing lawsuits against prison officials is conduct protected by the First Amendment. <u>Hill v. Lappin</u>, 630 F.3d 468, 472 (6th Cir. 2010); <u>Bell v Johnson</u>, 308 F.3d 594, 607 (6th Cir. 2002). Further, in the prison context, placement in segregation may be considered adverse. <u>See Thaddeus-X</u>, 175 F.3d at 396. The third element Mr. Robison must establish to succeed on his claim is that the adverse action was motivated, at least in part, by his pursuit of this lawsuit. <u>Siggers-El v. Barlow</u>, 412 F.3d 693, 699 (6th Cir. 2005). As Defendants assert, Mr. Robison has not set forth sufficient facts directed to this element.

As Defendants note, Mr. Robison has offered nothing directed to this element beyond his mere speculation. Further, they have submitted declarations averring that they did not issue the NEXUS report and they do not know who did. Additionally, while courts

-7-

recognize that direct evidence of retaliatory motive is difficult to demonstrate and circumstantial evidence, including disparate treatment of similarly situated individuals or temporal proximity, might establish retaliatory motive, Mr. Robison has not presented any such evidence here. To the extent Mr. Robison is suggesting temporal proximity because the NEXUS report's issuance and his placement in segregation occurred following his alerting Defendants that he intended to file a motion to compel, courts are reluctant to find that temporal proximity alone establishes retaliatory motive. Hill v. Lappin, 630 F.3d at 475-76. For all of these reasons, the Court cannot conclude that Mr. Robison has demonstrated a strong likelihood of success on the merits.

The fact that Mr. Robison has been granted leave to file an amended complaint setting forth this claim does not change the Court's analysis. In doing so the Court recognized that "[t]he trial court has the discretion to grant a party leave to amend a complaint, even where the amended pleading might ultimately be dismissed." Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Md., 715 F.Supp. 578, 581 (S.D.N.Y. 1989). Further, on a motion to dismiss under Rule 12(b)(6), Mr. Robison need only state a plausible claim for relief. To obtain a preliminary injunction, however, as discussed above, he must go further and establish the likelihood of succeeding on his claim. QVC, Inc. v. Resultly, LLC, – F.Supp.3d –, 2016 WL 521197, n.6 (E.D. Pa. Feb. 10, 2016).

## 2. Irreparable Injury

Turning to the second factor, Defendants argue that Mr. Robison cannot demonstrate irreparable harm because he spent only one day in segregation. As Mr. Robison explains, however, this is not the irreparable harm he is claiming. Rather, Mr. Robison asserts that the continuing deprivation of his First Amendment rights in the form of retaliation for pursuing this litigation

-8-

constitutes irreparable harm. Certainly, "[a] plaintiff can show an irreparable injury sufficient to satisfy the preliminary-injunction standard if an alleged deprivation of a constitutional right is involved." Doe v. The Ohio State University, 136 F.Supp.3d 854, 871 (S.D. Ohio 2016)(citations and internal quotation marks omitted). That is, "when First Amendment freedoms are at risk, the irreparable harm factor 'merges' with the likelihood of success, such that if a plaintiff shows he is likely to succeed on the merits, he has simultaneously proven he will suffer an irreparable harm." Monaghan v. Sebelius, 916 F.Supp.2d 802, 811 (E.D. Mich. 2012), citing McNeilly v. Land, 684 F.3d 611, 620-21 (6th Cir. 2012). "But if a court finds it unlikely that a plaintiff will succeed on the merits of a constitutional claim, the 'argument that he is entitled to a presumption of irreparable harm based on the alleged constitutional violation is without merit.'" Doe at 871, quoting Overstreet, 305 F.3d at 578; see also McNeilly, 684 F.3d at 620-21 ("Because [the plaintiff] does not have a likelihood of success on the merits, ... his argument that he is irreparably harmed by the deprivation of his First Amendment rights also fails"). Under that circumstance, "[t]he Court must look elsewhere for irreparable harm." Id. Because, as discussed above, Mr. Robison has not established a strong likelihood of success on this particular retaliation claim, he has not established that he could suffer irreparable harm. Consequently, this factor does not weigh in his favor.

### 3. Remaining Factors

With respect to the issue of substantial harm to others, Mr. Robison does not address this issue in much detail other than to contend that the balancing of equities clearly favors him. Essentially, he argues that he will continue to suffer harm if he is denied the ability to effectively litigate this case. He

-9-

asserts that the Defendants' "hardships amount to no more than business as usual, freely giving, what is freely given." With respect to the public interest factor, Mr. Robison asserts only that prison officials' obeying the law and upholding the Constitution generally serves the public interest. Defendants argue with respect to both factors that it is generally in the best interest of all concerned for courts to refrain from becoming involved in day-to-day prison operations. The Court agrees with Defendants that, given Mr. Robison's inability to demonstrate a likelihood of success on the merits, balancing the harms and the public interest both support the Court's leaving the day-to-day operation of state prisons to state prison officials. See Rhinehart v. Scutt, 509 Fed.Appx. 510, 515 (6th Cir. 2013). Consequently, under the circumstances presented here, these factors do not weigh in Mr. Robison's favor. In light of all the above, the Court will recommend that the motion for a preliminary injunction be denied.

II. Motion for Judgment on the Pleadings

Defendants have moved for judgment on the pleadings seeking dismissal of "Plaintiff David A. Robison's Amended Complaint Portion alleging 'Defendants continue to commit further retaliation' for failure to state a claim upon which relief can be granted." In support of this motion, they contend that Mr. Robison has failed to exhaust this new allegation of retaliation. According to Defendants, Mr. Robison contends that the NEXUS report was filed against him on March 28, 2016, but his inmate grievance history demonstrates that he has not filed an informal complaint resolution since July 27, 2015. Defendants attached a copy of Mr. Robison's grievance history form as Exhibit A to their answer to the amended complaint.

In response, Mr. Robison argues that, under the clear language of the PLRA, the requirement for exhaustion does not

-10-

apply to amended complaints and that the amended allegations are simply allegations of a pattern of retaliation dating back to 2014.  Further, he contends that because Defendants did not raise the exhaustion issue in response to his motion for leave to amend, they are not able to raise it now after the Court has already allowed the amendment.

In reply, Defendants argue that Mr. Robison's amended complaint alleges new retaliation claims even if he considers them part of a pattern of retaliation.  Additionally, Defendants cite to numerous cases which they claim hold that the exhaustion requirement applies to claims raised for the first time in an amended complaint.

Mr. Robison filed a sur-reply.  The gist of this filing is that, in his view, his claim of retaliation, the method of retaliation (the filing of a false conduct report), and the defendants are all the same.  As a result, he believes any additional attempts at exhaustion would have been "futile."

### A.  Legal Standard

A motion for judgment on the pleadings filed under Fed.R.Civ.P. 12(c) attacks the sufficiency of the pleadings and is evaluated under the same standard as a motion to dismiss. Amersbach v. City of Cleveland, 598 F.2d 1033, 1038 (6th Cir. 1979).  In ruling upon such motion, the Court must accept as true all well- pleaded material allegations of the pleadings of the opposing party, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.  Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 479 F.2d 478, 480 (6th Cir. 1973).  The same rules which apply to judging the sufficiency of the pleadings apply to a Rule 12(c) motion as to a motion filed under Rule 12(b)(6); that is, the Court must separate factual allegations from legal conclusions, and may consider as true only those factual allegations which

-11-

meet a threshold test for plausibility.  See,e.g., Tucker v.
Middleburg-Legacy Place, 539 F.3d 545 (6th Cir. 2008), citing,
inter alia, Bell Atlantic Corp. v. Twombly,550 U.S. 544 (2007).
It is with these standards in mind that the motion for judgment
on the pleadings must be decided.

B. <u>Analysis</u>

The PLRA requires a prisoner to exhaust administrative
remedies prior to filing an action in federal court.  42 U.S.C.
§1997e(a).  "To exhaust a claim, a prisoner must proceed through
all steps of a prison or jail's grievance process, because an
inmate 'cannot abandon the process before completion and claim
that he has exhausted his remedies.'"  Umani v. Caruso, 2008 WL
2216283, *5 (E.D. Mich. May 27, 2008), quoting Hartsfield v.
Vidor, 199 F.3d 305, 309 (6th Cir. 1999).  Although exhaustion is
not a jurisdictional prerequisite, it is a mandatory requirement.
See Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999).  Failure
properly to exhaust bars suit in federal court.  See Woodford v.
Ngo, 548 U.S. 81 (2006).  Further, "several appellate courts have
held that the PLRA does not preclude the addition of new and
different claims through the filing of an amended complaint
following exhaustion."  Israfil v. Woods, 2011 WL 8006371 (S.D.
Ohio Dec. 7, 2011)(citations omitted).

A prisoner's failure to exhaust administrative remedies is
an affirmative defense which a defendant must plead and prove.
Jones v. Bock, 549 U.S. 199 (2007).  Because the exhaustion
defense need not be pled, that defense typically may not be
addressed in a Rule 12(b)(6) motion.  Anderson v. Jutzy, –
F.Supp.3d –, 2016 WL 1211747, *3 (E.D. Mich. March 29, 2016).
Rather, the defense may be raised by a motion for summary
judgment.  Id.  "The summary judgment motion is especially well
suited to pretrial adjudication of an exhaustion defense, because
proof of lack of exhaustion generally requires resort to matters

-12-

outside the pleadings, such as affidavits, or documentary evidence." Id., citing Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1104 (6th Cir. 2010).

Defendants appear to be aware of the above limitation arising from the nature of exhaustion as an affirmative defense. They, however, have attempted to craft a pathway around this limitation for purposes of their motion for judgment on the pleadings. Their argument that it is appropriate for the Court to consider the information contained in Mr. Robison's grievance history form at the pleading stage is as follows. First, they assert that Mr. Robison "specifically referenced" his inmate grievance history "in the Complaint at Doc.#: 38, PAGEID#: 270." They explain that, as a result of this reference, they attached a copy of Mr. Robison's grievance form to their answer. Relying on Rule 10(c), which states that "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleadings for all purposes," the Defendants argue that the Court is able to consider this form in evaluating the motion for judgment on the pleadings. Because this form indicates that Mr. Robison did not pursue an informal complaint resolution relating to his new claim, they contend that they are entitled to judgment on the pleadings as to this claim.

The Court sees two basic problems with Defendants' argument. First, the Court is not convinced that Mr. Robison's unauthenticated grievance history form is a "written instrument" as contemplated by Rule 10(c). Rather, as explained by the court in Copeland v. Aerisyn, LLC, 2011 WL 2181497, *1 (E.D. Tenn. June 3, 2011):

> An "instrument is defined by Black's Law Dictionary (9th ed. 2009) as "[a] written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." As discussed in Rose v. Bartle, 871 F.2d 331, 340 n.3 (3d Cir. 1989), types of exhibits

-13-

ordinarily incorporated within the pleadings under
Fed.R.Civ.P. 10(c), generally include contracts, notes,
and other "writing[s] on which [a party's] action or
defense is based."  See also DeMarco v. DepoTech Corp.,
149 F.Supp.2d 1212, 1219 (S.D. Cal. 2001)(defining
"written instrument" to include examples "such as a
deed, will, bond, lease, insurance policy or security
agreement")(citations omitted); Benzon v. Morgan
Stanley, No. 3:03-0159, 2004 WL 62747 at *2 (M.D. Tenn.
Jan. 8, 2004).

In that case, the court concluded that deposition testimony
and notes from witnesses "would be considered evidentiary support
and their inclusion at the initial pleading stage procedurally
'blurs the distinction between summary judgment and dismissal for
failure to state a claim upon which relief could be granted'
aspects of litigation."  Id., quoting Rose, 871 F.2d at 340 n. 3.
Other courts have also held that the term "written instruments"
generally includes "documents evidencing legal right or duties
such as deeds, wills, bonds, leases, insurance policies or
security agreements."  Correction Officers Benevolent Ass'n of
Rockland County v. Kralik, 226 F.R.D. 175, 176 (S.D.N.Y. 2005)
(letters not written instruments for purposes of Rule 10(c)).

Defendants do not cite to any authority for their suggestion
that an inmate's grievance history form falls within the
definition of "written instrument" as that term is typically
understood.  To the extent that they cite any authority at all,
the cases merely reinforce that an answer is a pleading, making
the language of Rule 10(c) applicable.  For example, in Hines v.
G. Reynolds Sims & Assoc., 2013 WL 1774938 (E.D. Mich. Apr. 25,
2013), the court, in considering a motion for judgment on the
pleadings, relied on Rule 7(a) noting that an answer was a
pleading and concluding that a release signed by the plaintiff
and attached to that answer was required to be considered as
"'part of the pleadings for all purposes.'  Fed.R.Civ.P. 10(c)'".
Similarly, in Menifee v. Rexam, Inc., 2005 WL 2230257 (N.D. Ohio

-14-

Sept. 13, 2005), the court, ruling on a motion for judgment on
the pleadings in an ERISA action, found medical evaluations
appended to an answer to be proper for consideration when the
plaintiff had referred to his application for benefits in his
complaint and those documents were part of that application.

The primary focus of Defendants' argument is that, although
generally, a court may not consider matters outside the pleadings
on a motion to dismiss, and by extension a motion for judgment on
the pleadings, the Court should consider Mr. Robison's grievance
history form because he referred to his grievance efforts in his
amended complaint.  The Court of Appeals has recognized that in
considering a motion to dismiss, courts "'primarily consider the
allegations in the complaint, although matters of public record,
orders, items appearing in the record of the case, and *exhibits
attached to the complaint*, also may be taken into account.'"
Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001),
quoting Nieman v. NLO, Inc., 108 F.3d 1546, 1554 (6th Cir. 1997).
 Additionally, the Court of Appeals has held that "'documents
that a defendant attached to a motion to dismiss are considered
part of the pleadings if they are referred to in the plaintiff's
complaint and are central to [the plaintiff's] claim.'"  Id.,
quoting Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997).

The idea that Mr. Robison's explanation of his grievance
steps in response to questions on the form complaint somehow
justifies the Court's consideration of the grievance history form
attached to defendants' answer is not persuasive.  The entire
reference to the grievance process on which Defendants rely is
found on the third page of Mr. Robison's form complaint.  In
Paragraph C under the heading "Place of Present Confinement," Mr.
Robison typed, in response to the form question "What [grievance]
steps did you take?" "Informal Complaint, Grievance to the
Institutional Inspector, Grievance to the Chief Inspector at

-15-

O.D.R.C."

The Court views Mr. Robison's answering of questions on the form complaint as different from pleading the contents of his grievance history form. As a result, the grievance history form cannot be viewed as forming the basis of Mr. Robison's new claim in this case. His new claim does not contain allegations about his grievance history but instead concerns the defendants' alleged retaliation against him for pursuing this action. The text of Mr. Robison's new claim does not include allegations, which if true, demonstrate his failure to exhaust this claim. In short, his grievance history is not central to the merits of his new retaliation claim. Consequently, the Court will recommend that the motion for judgment on the pleadings on grounds of exhaustion be denied.

In reaching this conclusion, the Court recognizes that, in his sur-reply, although he indicates no intention of abandoning his new claim of retaliation, Mr. Robison does appear to concede that he has not exhausted this claim. If that is in fact the case, the issue will easily be resolved at the summary judgment stage.

### IV. Motions to Compel

Mr. Robison has filed two motions to compel (Docs. 45 and 50). These motions were filed within one week of each other. Prior to filing these motions, Mr. Robison filed a motion for sanctions (Doc. 41).

Turning first to the motion for sanctions, Mr. Robison seeks $300.00 for time and expenses he incurred in filing a motion to compel that was granted by the Court by order dated June 16, 2016. Defendants have opposed this motion, citing various reasons including a reasonable difference of opinion over whether the requested discovery was within their custody and control, lack of prejudice to Mr. Robison, and his failure to document the

-16-

dollar amount of the sanctions requested.

Fed.R.Civ.P. 37 (a)(5) requires the Court to direct payment of the movant's reasonable expenses when a motion to compel is granted.  There are limited exceptions to this requirement including where the circumstances of the case would make such an award of expenses unjust.  The Court finds that this not a case which justifies an award of expenses to Mr. Robison.  As Defendants note, Mr. Robison has suffered no prejudice and he has not provided any documentation supporting his requested award. Consequently, the motion for sanctions will be denied.

Mr. Robison's first motion to compel was filed on July 1, 2016.  This motion seeks responses to the First Set of Interrogatories propounded to each Defendant.  According to the motion, Mr. Robison served 25 interrogatories on each defendant. Mr. Robison contends that Mr. Coey provided "evasive, incomplete or irrelevant responses" to thirteen of interrogatories and Mr. Posey provided similar responses to twelve of them.  Mr. Robison has attached copies of the interrogatory responses and identifies generally which responses he considers evasive, incomplete or irrelevant, but does not discuss each response in any detail.

Defendants responded to this motion in some detail, but the crux of their detailed response is that Mr. Robison has not demonstrated the relevance of the interrogatories.  Consequently, Mr. Robison's reply is devoted to explaining the relevance of most of the interrogatories he contends the defendants have improperly answered.  A review of the interrogatories and responses indicates that both Mr. Coey and Mr. Posey answered these interrogatories despite their objections.

The general principles involving the proper scope of discovery are well known.  The Federal Rules of Civil Procedure authorize extremely broad discovery.  <u>United States v. Leggett & Platt, Inc.</u>, 542 F.2d 655, 657 (6th Cir. 1976), <u>cert.</u>

-17-

denied 430 U.S. 945 (1977); see also Lewis v. ACB Business
Servs., Inc., 135 F.3d 389, 402 (6th Cir. 1998)("The scope of
discovery under the Federal Rules of Civil Procedure is
traditionally quite broad"). Therefore, Fed.R.Civ.P. 26 is to be
construed liberally in favor of allowing discovery. Dunn v.
Midwestern Indemnity, 88 F.R.D. 191, 195 (S.D. Ohio 1980).
However, recent amendments to Fed. R. Civ. P. 26(b)(1) highlight
certain proportionality factors which the parties are to consider
in making discovery requests, responses, or raising objections.
See Advisory Committee Notes to December 1, 2015 amendments
("[t]his change reinforces the Rule 26(g) obligation of the
parties"). Thus, under current Fed.R.Civ.P. 26(b)(1), the
parties may obtain discovery regarding any non-privileged matter
which is relevant to any claim or defense and proportional to the
needs of the case.

The proportionality analysis requires consideration of a
number of factors, including the importance of the issues at
stake in the action, the amount in controversy, the parties'
relative access to relevant information, the parties' resources,
and the importance of the discovery in resolving the issues.
Consideration must also be given to whether the burden or expense
of the proposed discovery outweighs its likely benefit. Fed. R.
Civ. P. 26(b)(1)'s inclusion of the proportionality factors
enforces the collective obligation to consider proportionality in
discovery disputes; it does not, however, permit a party to
refuse discovery simply by making a boilerplate objection that
the information requested is not proportional. See Advisory
Committee Notes to December 1, 2015 amendments. Further, the
party seeking discovery does not bear the burden of addressing
all of the proportionality factors. Id.

Also, despite other changes to Rule 26, it is still the case
that information need not be admissible in evidence in order to

-18-

be discoverable.  Fed. R. Civ. P. 26(b)(1); see also Mellon v. Cooper-Jarrett, Inc., 424 F.2d 499, 500-501 (6th Cir. 1970) (noting that "[t]he scope of examination permitted under Rule 26(b) is broader than that permitted at trial").

The Court has the duty to deny discovery directed to matters not legitimately within the scope of Rule 26, and to use its broad discretionary power to protect a party from harassment or oppression which may result even from a facially appropriate discovery request.  See Herbert v. Lando, 441 U.S. 153 (1979); see also Lavado v. Keohane, 992 F.2d 601 (6th Cir. 1993)("[I]t is well established that the scope of discovery is within the sound discretion of the trial court")(quoting Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1240 (6th Cir.), cert. denied 454 U.S. 893 (1981)).  Further, the Court has discretion to limit or even preclude discovery which meets the general standard of relevance found in Rule 26(b)(1) if the discovery is unreasonably cumulative or duplicative, can be obtained from some other source which is more convenient, less burdensome, or less expensive, or if the party seeking the information has had ample opportunity to obtain it in the action.  See Fed. R. Civ. P. 26(b)(2).  It is with these general principles in mind that the present discovery motion will be resolved.

Before addressing in detail the relevance of the particular discovery requests at issue, the Court finds it necessary to reiterate the precise nature of Mr. Robison's retaliation claim following the Court's ruling on the motion to dismiss the original complaint.  In its Report and Recommendation, the Court found that, although Mr. Robison may have alleged two forms of protected conduct - questioning his supervisor regarding his participation in tracking staff hours, an activity he believed to be prohibited, and responding truthfully to questioning in connection with an investigation of a broken lock undertaken by a

-19-

supervisor - he alleged the remaining elements of a retaliation claim only with respect to the latter.  As the Court previously explained:

> With respect to the second element of a retaliation claim, adverse action, Mr. Robison alleges that Mr. Coey wrote a false conduct report against him in order to remain in Mr. Posey's good graces, and that, as a result, Mr. Robison lost his job and his ability to earn good time credits.  It appears from the complaint that this false conduct report related only to his statements regarding Mr. Posey's alleged criminal conduct.  The complaint explains that, in response to his concerns about tracking staff members, Mr. Coey and Mr. Cruse did not take any action.  For example, Mr. Robison states that, "[w]hen Defendants Coey and Cruse realized that the Plaintiffs direct supervisor, Mr. Blakeman was not going to back down on the fact that Plaintiff did nothing wrong, Defendants Coey and Cruse decided not to demote the Plaintiff while making threats of retaliation the "next" time the Plaintiff did not follow direct orders."  See Complaint (Doc. 3), p. 12.  Based on this statement, the Court concludes that Mr. Robison has not asserted any adverse action arising from the statements of concern he made to his supervisor regarding tracking staff hours.  At most, he has alleged a threat of some undefined future retaliation which would be made in response to his failure to follow some unspecified orders.  This statement, without more, is insufficient to allege an adverse action sufficient to support a retaliation claim.  See, e.g., Thaddeus-X, 175 F.3d at 398 ("certain threats ... are so de minimis that they do not rise to the level of being constitutional violations...").  Consequently, the Court will consider the adverse action element of Mr. Robison's retaliation claim only as it relates to the statements he made in connection with Mr. Blakeman's investigation regarding Mr. Posey's alleged criminal activity.

In his motion to compel, Mr. Robison seeks further responses to various interrogatories directed to Mr. Coey.  These interrogatories include Nos. 2-7, 10, 11, 16-19 and 21.  In response to Mr. Robison's motion, Defendants argue that he has not met his burden of establishing the relevance of the

-20-

information sought.  In his reply, however, Mr. Robison addresses
the relevance of these interrogatories with the exception of Nos.
10 and 11.  He contends generally that all of these
interrogatories are directed to the issue of whether Mr. Coey had
a "motive to cover and conceal the criminal acts of Defendant
Posey by issuing a 'false' Conduct Report against the Plaintiff."
Because Mr. Robison has not addressed the relevance of
Interrogatory Nos. 10 and 11 in his reply, the Court will not
address them in ruling on the motion to compel.

Interrogatories 2 through 7 relate to Mr. Robison's claim
that he was retaliated against for voicing his concerns over
tracking staff hours.  Because this claim was dismissed, the
information sought through these interrogatories does not meet
the relevance standard of Rule 26 described above.  Consequently,
the motion to compel will be denied as to these interrogatories.

Interrogatories 16 and 17, respectively, relate to
allegations that the defendants are illegally seeking financial
gain through improperly invoiced masking tape orders or the
recycling of OPI scrap metal.  These allegations are not part of
Mr. Robison's retaliation claim.  Consequently, these
interrogatories are not seeking relevant information as
contemplated by Rule 26 and the motion to compel will be denied
as it relates to them.

Interrogatory No. 18 asks about Mr. Coey's involvement in a
grievance filed in relation to Mr. Posey's hiring.  The basis for
this interrogatory is Mr. Robison's belief that Mr. Coey was
aware that a competing candidate originally was awarded the
position, that Mr. Coey found an error in this individual's
application and made sure that Mr. Posey was then awarded the
position, and that Mr. Coey somehow was involved in the competing
candidate's grievance process.  Mr. Coey responded to this
interrogatory, over objection, stating that "... hiring decisions

-21-

are made by personnel and DAS." Defendants argue that whether a hiring grievance was filed has no bearing on whether Mr. Robison was properly removed from his job in the OPI paint shop. The Court agrees that this interrogatory seeks information that is not relevant to Mr. Robison's claim here. Consequently, the motion to compel will be denied as to Interrogatory No. 18.

Interrogatory No. 19 asks Mr. Coey to explain the relationship he has or has had in the past with Mr. Posey's mother. The basis for this interrogatory is Mr. Robison's belief that Mr. Coey had reason to ensure that Mr. Posey retained his job at OPI. Mr. Coey chose to answer this question, over objection, stating "... in the interest of cooperation, and without waiving the objections, hiring decisions are made by personnel and DAS." This answer is not responsive to the question. To the extent that Defendants chose to answer the question over objection, they were required to answer the question asked. Consequently, the motion to compel will be granted as to this interrogatory.

Finally, with respect to the motion to compel as it relates to Mr. Coey, Interrogatory No. 21 asks him to explain why on March 12, 2015, two days after the Ohio State Highway Patrol questioned inmate Ronald Martin A319-029 concerning Mr. Blakeman's missing lock, he took eight months of "emergency stress" leave. Mr. Robison does not address the relevance of this interrogatory beyond his speculation that Mr. Coey "was intentionally avoiding having to answer some tough questions and thought by taking leave he would be forever absolved from being held accountable for his actions." Without more, the Court is not persuaded that the reasons for any alleged leave taken by Mr. Coey several months after the incident alleged in the complaint is relevant to Mr. Robison's retaliation claim. Consequently, the motion to compel will be denied as to this interrogatory.

-22-

With respect to Mr. Posey, Mr. Robison seeks to compel further responses to Interrogatory Nos. 2, 3, 4, 11, 13 through 16, 18, and 20 through 22. He contends that this information is relevant based on Mr. Posey's alleged criminal conduct and his alleged history of threatening and abusing ODRC inmates. Mr. Robison contends that Mr. Posey has "perjured himself on multiple occasions" in his discovery responses.

The information sought by most of these interrogatories is not relevant to Mr. Robison's retaliation claim relating to the investigation of the alleged broken lock. Specifically, Interrogatory No. 2 relates to the grievance surrounding Mr. Posey's hiring at OPI. Interrogatory No. 4 relates to a story Mr. Posey told Mr. Robison about Mr. Posey's brother and another inmate. Interrogatory Nos. 13 through 16 all relate to use of force issues. Interrogatory No. 18 seeks information relating to recycling scrap metal. Mr. Robison's claim is not that he was retaliated against for his knowledge of any alleged illegal dealings regarding scrap metal. Interrogatory No. 20 relates to stories about Mr. Posey and his brother and his brother's alleged forced resignation. Finally, Interrogatory Nos. 21 and 22 relate to alleged threats Mr. Posey made to another inmate who commented on his apparel. Interrogatory Nos. 3 and 11 arguably relate to Mr. Robison's claims - they both relate to whether Mr. Posey was working in the OPI Paint Shop during the time relating to the allegations of the complaint - but Mr. Robison simply challenges the truthfulness of Mr. Posey's responses and argues that Mr. Posey has perjured himself. Even if that is so, compelling a further answer will not solve that problem. For these reasons, the motion to compel will be denied as to the interrogatories directed to Mr. Posey.

Mr. Robison's second motion to compel was filed on July 8, 2016. This motion seeks a copy of the NEXUS report filed against

-23-

him in late March, 2016.  In support of this motion, he provided
a copy of a letter dated June 20, 2016, addressed to defense
counsel requesting a copy of the report and demanding that the
report be provided to him within seven days or he will file a
motion to compel.  Defendants responded to this motion contending
that this letter is not a formal discovery request pursuant to
Rule 34 and that the motion is premature, given that Mr. Robison
allowed them only seven days to respond.  Defendants also contend
that Mr. Robison did not attempt to resolve this issue extra-
judicially nor did he certify his efforts to do so.  Finally,
Defendants argue that not only has Mr. Robison not demonstrated
the relevance of this document, but he is unable for the reasons
raised in their motion for judgment on the pleadings.  In reply,
Mr. Robison requests that the Court consider the request for the
NEXUS report to be part of his original request for production of
documents that was the subject of a previously granted motion to
compel.

Rule 34, which governs requests for production of documents
generally grants parties 30 days to respond.  Mr. Robison did not
allow Defendants 30 days to respond.  Further, he filed his
motion to compel before 30 days had passed.  Consequently, the
motion to compel is premature and will be denied.

The Court notes that on July 22, 2016, Mr. Robison filed a
document captioned as "Plaintiffs Request for Supplemental
Discovery Pertaining to the Amended Complaint."  This document
appears to be a discovery request relating to the NEXUS Report.
Absent circumstances not present here, such discovery requests
are not to be filed.  Fed. R. Civ. P. 5(d).  Consequently, the
Court will strike this filing.

### V.  Renewed Motion to Compel

Mr. Robison filed a renewed motion to compel as a follow-up
to his motion to compel granted by order dated June 16, 2016.

-24-

According to Mr. Robison, this renewed motion is necessary
because Defendants did not produce all of the requested documents
as ordered and because "several documents provided [] were not
what the Plaintiff anticipated from the Defendants."  He
identifies four sets of documents he contends have not been
adequately produced.  The specific document requests include:

> 1.  OPI Guard Shack "log book" (Employee Visit
> Record) for CCI from September 30 to October 23, 2014
> and the single day of November 4, 2014.

> 10.  Defendant Posey's disciplinary records since
> the beginning of his employment at the ODRC including
> his employment at OPI.

> 19.  Time Clock Records for the Plaintiff for the
> dates of September 30 to October 23, 2014.

> 20.  A copy of the vendor invoice for the company
> MSC showing the order for 2800 rolls of masking tape in
> mid-summer 2014.

In response to Mr. Robison's original motion to compel
addressed to these and other document requests, Defendants
contended that they did not have sufficient "possession, custody,
or control" of these documents (see Fed.R.Civ.P. 34 (a)(1)) to be
able to produce them.  Limiting itself to the issue as framed by
the parties, the Court noted that individual defendants in
prisoner civil rights cases, through their attorneys, who also
represent the ODRC, have the practical ability to obtain
requested documents in response to a Rule 34 request.
Consequently, the Court directed Defendants to determine which of
the documents they have the practical ability to obtain and to
produce them or make other appropriate objections to doing so.

In response to the renewed motion to compel, Defendants
assert generally at the outset that this information is not
relevant to any claim or defense.  Beyond this, Defendants argue
that they produced the Log Book in response to No. 1.  To the

-25-

extent that Mr. Robison now contends that he inadvertently
requested that book when he intended to request the Employee
Visit Record, the Defendants assert that they are under no
obligation to produce a document that was not requested.  The
Court agrees and will deny the motion to compel as to this
request.

With respect to Requests for Production Nos. 19 and 20,
Defendants assert that such documents do not exist.  They state
specifically that neither they nor CCI have any documents in
their control responsive to these requests.  Mr. Robison takes
issue with this representation, explaining that these are not
"CCI documents" but "OPI records."

The Court is not clear what the difference is between CCI
documents and OPI documents.  Defendants produced the OPI guard
shack log book in response to Mr. Robison's request.  Further,
Mr. Robison insists that certain records he is seeking are kept
on Mr. Coey's computer or that other records are kept in
Defendants' invoice files.  These records would presumably be
within the confines of CCI.  Defense counsel has represented that
these documents do not exist.  Implicit in this representation is
the understanding that, consistent with the Federal Rules, "to
the best of [her] knowledge, information and belief formed after
a reasonable inquiry," there are no documents responsive to these
requests.  Fed.R.Civ.P. 26(g).  If that representation turns out
not to be correct, Rule 26(g)(3) provides the potential for
relief.  See Brown v. Tellermate Holdings Ltd., 2014 WL 2987051
(July 1, 2014).  As the record currently stands, however, based
on defense counsel's representation, the motion to compel will be
denied as to these requests.

With respect to Document Request No. 10 seeking Mr. Posey's
disciplinary records, Defendants contend that his entire
disciplinary file contains three records regarding confidential

-26-

security matters - two indicating "This is not a Discipline" and one regarding an alleged use of force against a suicidal inmate. They assert that none of these records are relevant to any claim or defense in this matter. Mr. Robison explains that he is "NOT seeking CCI records pertaining to staff discipline concerning this isolated incident, [but] is seeking ODRC records pertaining to the conduct and character of Defendant Posey while working at the Corrections Reception Center as well as any other ODRC location where he may have abused ODRC inmates during his employment." According to Mr. Robison, he alleges in his complaint that Mr. Posey threatened him and told him stories of abuse he inflicted on other inmates in an effort to psychologically intimidate Mr. Robison into keeping silent about Mr. Posey's criminal activities. Mr. Robison believes that Mr. Posey's disciplinary file will reveal "a long history of abusing and threatening ODRC inmates."

Mr. Robison's claim is not that he was intimidated into keeping silent about Mr. Posey's criminal activities. In fact, Mr. Robison's claim is actually the opposite - that he was truthful about one particular incident he allegedly witnessed - and that he was retaliated against for his truthful statements made in the course of an investigation. The Court does not see how the information Mr. Robison seeks through this interrogatory is relevant to this claim. Consequently, the motion to compel will be denied on this ground.

VI. <u>Extension of discovery deadline</u>

Mr. Robison requests a 60-day extension of the discovery deadline until September 30, 2016. According to Mr. Robison, this extension is necessary due to the Defendants' conduct and his need for the NEXUS report in support of his amended complaint.

Defendants vehemently oppose this motion, noting that no

such report exists so there is no need to extend the discovery deadline pending its production.  Beyond this, however, Defendants contend that extending the discovery deadline provides "the potential for further annoyance, harassment, oppression and undue burden and expense."  This is underscored, they assert, by "the barrage of 357 irrelevant, compound, unintelligible and/or scurrilous requests ... propounded by Plaintiff and answered over objection by the Defendants."  The bulk of their response is devoted to explaining in some detail the inappropriateness of multiple discovery requests.

In reply, Mr. Robison states that he is not seeking an extension to obtain the NEXUS report or to seek additional discovery.  Rather, he states that the extension is necessary to allow him to conclude pending discovery matters, including his motions to compel.

The Court finds that Mr. Robison has set forth good cause for an extension of the discovery deadline.  Consequently, the motion will be granted.

VII.  <u>Recommendation and Order</u>

For the reasons stated above, the Court recommends that the motion for temporary restraining order and preliminary injunction (Doc. 26) be denied.  It is further recommended that the motion to dismiss (Doc. 28) be denied as moot.  Additionally, it is recommended that the motion for judgment on the pleadings (Doc. 40) be denied.  The motion for sanctions (Doc. 41) and the second motion to compel (Doc. 50) are denied.  The first motion to compel (Doc. 45) is granted to the extent that Mr. Coey is directed to respond to Interrogatory No. 19 and is denied in all other respects.  Mr. Coey shall respond to this interrogatory within fourteen days of the date of this order.  The renewed motion to compel (Doc. 53) is denied.  The motion for extension of time to complete discovery (Doc. 55) is granted.  All

discovery shall be completed by September 30, 2016.  The motion for supplemental discovery (Doc. 57) is stricken.

PROCEDURE ON OBJECTIONS TO THE REPORT AND RECOMMENDATION

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

MOTION FOR RECONSIDERATION OF THE ORDER

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a).  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the

-29-

motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge