```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

David A. Robison,             :

       Plaintiff,      :    Case No. 2:15-cv-944

  v.                          :    JUDGE JAMES L. GRAHAM
                                  Magistrate Judge Kemp
Woody Coey, et al.,           :

       Defendants.     :

## REPORT AND RECOMMENDATION AND ORDER

This matter is before the Court on a motion for summary judgment filed by defendants Woody Coey and Cody Posey.  The motion has been fully briefed and is now ripe for decision.  Also before the Court are three discovery-related motions filed by plaintiff David A. Robison.  For the following reasons, the Court will recommend that the motion for summary judgment be granted.  The Court resolves the remaining motions as follows.

### I.  Background

Plaintiff David A. Robison, an inmate at the Chillicothe Correctional Institution, filed this action under 42 U.S.C. §1983 alleging violations of his First and Fourteenth Amendment rights as a result of the conduct of defendants Woody Coey, Cody Posey, Brent Cruse, Corby Free, Roger Wilson, and Gary Mohr.  Mr. Robison's claims (detailed below) all arise from an incident which took place in October, 2014, when, according to Mr. Robison, Cody Posey, a corrections officer, broke a lock on the locker of Mr. Blakeman, who was Mr. Robison's work supervisor in an OPI paint shop at CCI.  Following the Court's order affirming the report and recommendation granting in part and denying in part a motion to dismiss, Mr. Robison asserts a claim against Mr. Coey and Mr. Posey for retaliation in violation of his First

Amendment rights.  See Robison v. Coey, 2015 WL 5437175 (S.D. Ohio Sept. 14, 2015) adopted and affirmed 2015 WL 6164113 (S.D. Ohio Oct. 21, 2015).   Mr. Robison was later granted leave to amend to assert a claim for further retaliation by these defendants.  See Robison v. Coey, 2016 WL 3350471 (S.D. Ohio June 16, 2016).

In the previous report and recommendation, the Court explained Mr. Robison's initial retaliation claim as follows:

> To summarize, Mr. Robison has stated a claim for retaliation based on the following allegations.  He provided statements to his supervisor Mr. Blakeman regarding Mr. Posey's alleged criminal activity in connection with Mr. Blakeman's investigation regarding the break-in to his locker.  As a result, Mr. Coey prepared a false conduct report against Mr. Robison in conspiracy with Mr. Posey which then caused Mr. Robison to lose his job and good time credits.  Mr. Coey and Mr. Posey conspired to have Mr. Coey write the false conduct report because Mr. Robison had implicated Mr. Posey in Mr. Blakeman's investigation.  Beyond these specific allegations and these specific defendants, Mr. Robison has not stated a retaliation claim.

2015 WL 5437175, at *8.

In its order granting leave to amend, the Court described Mr. Robison's additional retaliation claim as follows:

> ... since Mr. Robison has not proposed any new defendants, he must be asserting that claim against Defendants Coey and Posey.  He has alleged a sequence of facts showing that shortly after he served discovery and moved to compel, the false "nexus" was lodged, and he also alleges that this was part of a pattern of retaliation he has been experiencing since 2014.  See Proposed Amended Complaint, Doc. 25, at 5.9 ("the Defendants will stop at nothing with their continuous constitutional deprivations and never ending attempts to thwart the forward progress of this case").

2016 WL 3350471, at *1.

## II.  Factual Background

-2-

Mr. Robison's initial claim is that he was retaliated against for giving truthful information to his supervisor, Tim Blakeman, during Mr. Blakeman's investigation of the break-in to Mr. Blakeman's locker. The factual background set forth below is taken from the parties' exhibits submitted in connection with the summary judgment motion.

The incident report form completed by Mr. Blakeman on October 23, 2014, following his discussion with Mr. Robison indicates the subject as "security" and reflects the following discussion with Mr. Robison:

> On 10-23-14 Inmate Robison 517-488 E-1 307-B stated to me that he felt uneasy and threatened by Cody Posey PWSI making snitch accusations towards him when Posey worked paint shop on 10-22-14 and that he – Robison was going to take it up front if any more came from it. Robison stated to me that he came into the office of the paint shop to get copies when I (TMB) was on vacation and Posey was trying to piece back a combination lock on the desk and Posey told him he'd better not find out that he told me (TMB) about the lock. Robison asked what are you going to do with it now. Posey stated I'm going to throw it over the fence. Robinson (sic) also stated that Posey stated that he is very well connected with DRC through his family. Robison also stated that Hagwood 180-004 F1 216-T said Posey also told him he was going to throw it over the fence but Hagwood said to Robison that he would not admit to it. Inmate Martin stated that Posey PWSI asked him to pick the lock on the locker in the paint shop tool room. Martin 319-029 E1 311-B told Posey no. Martin was asked to pick the lock sometime when I was on vacation. Reported this to Captain Brown and Woody Coey.

The form further indicates that the action taken was:

> - Communicated incident to Mr. Coey.
>
> - Notified Major Camp and DWO Pierce. Electronic communication to DWSS
>
> - Inmates Robison, Martin and Hagwood reassigned

to Seg pending further investigation.

The bottom portion of this report indicates that it was reviewed by Warden Charlotte Jenkins on October 24, 2014. Handwriting appearing to be hers states [] Follow up: By OPI Supervisor Woody C to handle.  Copies of the report were to be distributed to Operations Major, LRO, Locksmith, and W. Coey.

Based on this incident report, Mr. Robison was interviewed by Mr. Coey on October 23, 2014.  According to Mr. Robison, he was called into Mr. Coey's office and questioned for approximately two hours about his knowledge of the missing lock. See Declaration of David A. Robison, ¶2, Doc. 63-1.  The conduct report arising from this discussion is dated November 3, 2014 and appears to be signed by Mr. Coey.  It identifies two rule violations: (27) giving false information or lying to departmental employees and (49) distruction (sic), alteration or misuse of property, and states:

> Be advised through an investigation of interviews and written statements it has been determined that Inmate Robison fabricated a story involving (2) OPI employees to intentionally cause conflict between the employees.  On 10/23/2014 Mr. Blakeman (OPI PWS-Paint Shop) reported by incident report (attached) that Inmate Robison was stating that he seen PWS Posey with a missing lock that had been reported the day prior by Mr. Blakeman.  He also reported that Inmate Robison was also stating that Mr. Posey was making "snitch accusations" towards him and he felt threatened by Mr. Posey and "he would take it up front if any more came of it."  During an interview with Inmate Robison (attached, signed statement) Inmate Robison contradicts himself and states the he has never felt threatened by Mr. Posey and Mr. Posey has never called him any kind of names.  Inmate Robison also stated in the interview that he never told anyone staff or inmate that he would "take it up front."
>
> Be advised Inmate Robison also took it upon himself to type up a statement (attached) on an OPI typewriter which is against OPI policy and a misuse of

>OPI equipment.
>
>Inmate Robison reclassed out of OPI.

This conduct report was based, at least in part, on an interview statement prepared by Mr. Coey and signed by Mr. Robison. Defendants and Mr. Robison have submitted identical copies of that interview statement with their filings. It states as follows:

>Inmate Robison 517-488 E-1
>
>States when Mr. Posey was working the Paint shop on a day Tim Blakeman was on Vacation, he went to the office to make copies and seen Mr. Posey sitting at the desk working on a lock. Robison states that lock was a (Master) combination lock silver in color with a blue face. Robison States he asked Mr. Posey, "did you break your lock", Posey replied "I broke Blakeman's lock". Robison States Posey said he was trying to get in the cabinet and the lock broke. Also Mr. Robison states Mr. Posey said if he couldn't get the lock fixed he was going to throw it over the fence.
>
>Robison sates he never visually seen Mr. Posey break the lock or try to get it off the cabinet. He states the days Mr. Posey was working in the Paint shop he never seen Mr. Posey in or around the cabinet at all.
>
>Robison states that Inmate Martin 319-029 told him in the unit (E-1) that Mr. Posey asked him to pick the lock.
>
>Robison states he was present the entire time the locksmith was in the Paint shop due to an issue with a lock on the cage/office door. Robinson (sic) states that he never heard anything mentioned to the locksmith concerning the lock in question on the cabinet. He states the incident with the lock took place after the locksmith was in the shop.
>
>Robison states he has never felt threatened by Mr. Posey nor does he now. He states Mr. Posey has not called him any names or treated him any different today than he had last week or a month ago.

>    Robison states he never told anyone, inmate or staff that he was going to up front and talk about the incident or to anyone else. He states he never stated he would "take it up front."
>
>    Robison states Mr. Posey yesterday (October 22) asked him if he told anyone about the lock and Robison stated his response was "No".
>
>    Robison says that he told Mr. Blakeman of the incident concerning the lock on Monday morning October 20th when asked by Mr. Blakeman.

In his declaration filed in this case, Mr. Robison states that this is not the interview statement he signed in Mr. Coey's office on October 23, 2014. See Declaration, ¶¶5 and 6, Doc. 63-1. He explains that certain information has been added to the statement he signed and other information has been deleted. He identifies this information as follows:

>    Information Added to the Interview Statement:
>
>    I NEVER told Defendant Coey that I was "present the entire time the Locksmith was in the Paint Shop due to an issue with a lock on the cage/office door." I would have never used the word "CAGE" because the issue with the lock was on the "OFFICE DOOR."
>
>    I NEVER told Defendant Coey that I "never heard anything mentioned to the Locksmith concerning the lock in question on the cabinet." I would have never used the word "CABINET" because the lock was on Mr. Blakeman's "LOCKER".
>
>    I NEVER told Defendant Coey "the incident with the lock took place after the Locksmith was in the Paint Shop.
>
>    I NEVER told defendant Coey that "I never felt threatened by Mr. Posey."
>
>    I NEVER told Defendant Coey "Mr. Posey has not called me any names or treated me different today than he had last week or a month ago."
>
>    See Declaration, Doc. 63-1, ¶¶7-11.

<u>Information Deleted from the Interview Statement</u>:

>    I told Defendant Coey that Inmate Ronald Martin A319-029 was asked by Defendant Posey to pick the lock on Mr. Blakeman's personal locker.
>
>    I told Defendant Coey that Mr. Blakeman told me that when he called to report the lock missing to the CCI Locksmith, Mr. Wolfenbarger before I got to work, Mr. Wolfenbarger said that Mr. Posey had asked him to remove the locks from Mr. Blakeman's personal locker as well as a black storage box that belonged to Mr. Blakeman.
>
>    I told Defendant Coey that inmate Ronald Martin A319-029 was so concerned about what Mr. Posey had asked him to do that he went and told another OPI Supervisor, Mr. Randy Dunham who told inmate Martin to wait and see what Mr. Posey would do.
>
>    I told Defendant Coey that on October 22, 2014 Defendant Posey worked the OPI Paint Shop while Mr. Blakeman was in training and came back to my office, pointed his finger in my face and said, "You told on me didn't you?"
>
>    I told Defendant Coey that I told Mr. Posey that I did not tell on him to avoid confrontation, to which Mr. Posey replied, "Don't let me find out."
>
>    I told Defendant Coey that I did not feel threatened now by Mr. Posey for the sole purpose of getting out of his office to avoid confrontation with Defendants Coey and Posey.

<u>See</u> Declaration, Doc. 63-1, ¶¶12-17.

Defendants and Mr. Robison also have submitted copies of Mr. Robison's own separate typed statement referred to in the conduct report. That statement reads:

>  I, David Robison Inmate #517-488 work as a Clerk in the OPI Paint Shop. About a week and a half ago, I went into the Supervisor's Office to make copies as is the custom pertaining to my job duties. When I went into the office Mr. Posey was sitting at his desk with a combination lock that appeared to be broken. I asked

> Mr. Posey if he broke his lock and he replied, "I broke Blakeman's lock. Then I asked him how he broke it and he responded, "I broke it when I tried to get into his locker". he then told me if he could not fix it, he would have to get rid of it. I said how are you going to get rid of a lock? Mr. Posey then told me he was to, "throw it over the fence". Mr. Posey then told me not to say anything to anyone about this, and if I did he would know that I was the one who told. Mr. Posey told me that he would find out if I ever told and then said, If Blakeman ask's you about the lock, tell him you don't know anything about it.
>
> Mr. Posey worked this shop for the three weeks that Mr. Blakeman was on vacation and several times he would say that his Uncle Posey was the Major at RCI and that all of his family worked for DRC. Because of this I did not say anything to anyone until Mr. Blakeman came back from vacation and looked at me and asked if I knew anything about the lock on his locker. At that point I could not lie to Mr. Blakeman and told him the truth. I have 14 to 50 years left on my sentence after doing almost 10 already and the last thing I want is to have problems with any staff member, but right is right and wrong is wrong and I WILL NOT LIE FOR ANYONE!

On November 4, 2014, Mr. Robison was called to Sgt. Rick Parnell's office and shown a copy of the conduct report. Declaration, Doc. 63-1, ¶18. Sgt. Parnell left this meeting to meet with Mr. Coey and asked Mr. Robison to return to his office in about an hour. Id. at ¶22. When Sgt. Parnell returned, he allegedly told Mr. Robison, "personally, I don't think you are guilty of anything, but Woody wants you out of OPI, so I have to find you guilty." Id. at ¶23.

Mr. Robison tried to explain his side of the story to Sgt. Parnell, stating that he did not lie about the lock but that he did lie about feeling threatened because he didn't want any conflict. Id. at ¶24. Mr. Robison explained that he had staff witnesses who could confirm his story and he asked Sgt. Parnell to refer him to the Rules Infraction Board so that witnesses could be called. Id. at ¶¶25-26. Sgt. Parnell refused this

request and told Mr. Robison "I am not sending this to R.I.B., your going to lose your job at OPI and this is where it ends today." Id. at ¶¶27-28. Sgt. Parnell returned from his meeting with Mr. Coey with an Inmate Work Evaluation Form for the termination process. Id. at ¶29. This report was signed by Mr. Coey and Sgt. Parnell and rated Mr. Robison at the lowest level - poor - in all of his job performance categories. Plaintiff's Exh. P.

Sgt. Parnell's hearing officer's report dated November 4, 2014 states that the conduct report was accurately completed, that Mr. Robison was informed of his right to be heard in his own defense, and that his plea was not guilty. Mr. Robison's statement to Sgt. Parnell is set forth as:

> I didn't lie about what happened with the lock. Mr. Posey was attempting to fix a lock that he admitted to me that he broke and told me not to tell anyone. I did lie about feeling threatened because I didn't want any conflict. Mr. Blakeman gave me permission to use the Typewriter and gave me a copy of my report.

Sgt. Parnell found that Mr. Robison was guilty of violating Rule 27 by lying, but that he was not guilty of violating Rule 49. He concluded that disposition by a hearing officer was appropriate and then imposed the following disposition: Reclass out of the O.P.I.

Sgt. Parnell issued his hearing report finding Mr. Robison guilty of lying in violation of Rule 27 after reviewing the information described above. Declaration of Rick Parnell, Doc. 61-1, 3-4. According to Sgt. Parnell, Mr. Robison could have called staff witnesses but chose not to do so. Id. at ¶5. Mr. Coey did not, according to this declaration, direct Sgt. Parnell to find Mr. Robison guilty and Sgt. Parnell has never found an inmate guilty because he was told to do so. Id. at ¶6. No one told Sgt. Parnell to re-class Mr. Robison out of his job at OPI.

Id. at ¶7.  The decision to do so was Sgt. Parnell's based on the evidence presented, including Mr. Robison's poor job evaluation ratings.  Id.  Based on Sgt. Parnell's experience at CCI, broken locks are commonly fixed or replaced by the locksmith so he did not find Mr. Robison's story about the lock credible.  Id.

Mr. Robison also has provided an unauthenticated copy of a document captioned as an "Industrial Employment/IPRS Action Report."  This document appears to be dated November 3, 2014, possibly signed by Brett Cruse, and indicates that the selected action is Mr. Robison's termination from his OPI job.

### III.  Legal Standard

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654 (1962).  The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby,

Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.  It is with these standards in mind that the instant motion must be decided.

### IV. The Motion for Summary Judgment

In their motion for summary judgment, defendants characterize Mr. Robison's complaint as alleging that Mr. Coey violated Mr. Robison's First Amendment right to be free from retaliation by writing a false conduct report.  They argue that Mr. Robison's retaliation claims fails for two primary reasons.  First, they assert that Mr. Robison admittedly lied in violation of inmate regulations and such a violation prohibits the conclusion that he was engaged in protected activity.  Further, they explain that, because the conduct report would have been written based on that lie regardless of whether Mr. Robison was telling the truth about the lock, Mr. Robison's retaliation claim fails.  They also note that Mr. Robison's finding of guilt on his conduct report bars his retaliation claim.  Additionally, defendants contend that Mr. Robison has failed to identify any retaliatory conduct engaged in by Mr. Posey.  Finally, they argue that they are entitled to qualified immunity.

In his response, Mr. Robison frames the issue presented in this case as "whether the Plaintiff 'Fabricated a story.'"  See Response (Doc. 63), p. 4.  According to Mr. Robison, the issue is not "whether the Plaintiff said he did not feel threatened, when he in fact did."  Id.  As Mr. Robison explains:

> Regardless of whether the Plaintiff lied about

> feeling threatened by Defendant Posey, he DID NOT lie or "Fabricate a story about a missing lock" In fact in the Hearing Officers Report (See Plaintiff's Exhibit E) the Plaintiffs statement was, "I didn't lie about what happened with the lock. Mr. Posey was attempting to fix a broken lock he admitted to me that he broke and told me not to tell anyone. I did lie about feeling threatened because I did not want any conflict." Defendants, in their Motion for Summary Judgement fail to give any evidence whatsoever that Plaintiff "Fabricated a story (about a missing lock) involving (2) OPI employees (Mr. Blakeman and Defendant Cody Posey) to intentionally cause conflict between the employees." This is what the Conduct Report accused the Plaintiff of doing, not lying about whether he felt threatened by Defendant Posey as the Defendants would mislead this court to believe."

In reply, defendants reiterate the arguments of their motion. In doing so, they contend that Mr. Robison's attempts to "pars[e] his lies" by focusing only on the issue of the lock is to no avail.

    Mr. Robison filed a sur-reply without seeking leave of Court. Defendants have not objected to this filing, however, so the Court will consider it. In his sur-reply, Mr. Robison asserts that defendants have set forth contradictory positions in their filings that should be prohibited on grounds of estoppel. He points at some length to what he describes as credibility issues and misrepresentations. He reiterates that the conduct report "proves that Plaintiff was not accused of lying about being threatened by Defendant Posey but rather accuses the Plaintiff of saying Defendant Posey broke into Mr. Blakeman's personal locker and was written as direct retaliation for the Plaintiff doing so. This is where the Constitutional violation took place." He accuses defendants of "egregious misrepresentation" by "trying to persuade this court that the protected conduct that the Plaintiff was engaged in was his conversations with Defendant Woody Coey as the investigator." He

explains that: "The question then still remains, did the Plaintiff give Mr. Blakeman truthful information regarding the locker incident and did Defendants Coey and Posey retaliate against him for doing so?"

## V. Analysis

In order to establish a retaliation claim, Mr. Robison must prove that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by his protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). The Court agrees with the defendants that, construing the facts in the light most favorable to Mr. Robison, his retaliation claim cannot succeed.

The Court reaches this conclusion despite the significant fervor with which Mr. Robison has pursued this litigation. Much of this fervor has been devoted to detailing allegations of theft and illicit financial schemes, inappropriate relationships and threatened sadistic behavior, all allegedly running rampant within the confines of CCI, including at the highest level. None of this detail, however, relates to Mr. Robison's claim that he was retaliated against in violation of his First Amendment rights as alleged in the complaint. Putting aside all of this peripheral information, Mr. Robison's claim arises from only the following simply stated and undisputed facts.

First, the parties agree that Mr. Robison made statements to Mr. Blakeman in the course of Mr. Blakeman's investigation of the broken lock. Mr. Blakeman prepared an incident report based on Mr. Robison's statements. These statements related to two distinct issues: (1) whether Mr. Robison was afraid of Mr. Posey and (2) whether Mr. Posey broke Mr. Blakeman's lock. Mr. Coey investigated the incident report. As part of his investigation,

he interviewed Mr. Robison.  During that interview, Mr. Robison conceded that he lied about being afraid of Mr. Posey.  Mr. Coey's conduct report cites this contradiction. It also concludes that Mr. Robison fabricated the story about the lock in an effort to cause conflict between staff members.

The conduct report was then forwarded to Sgt. Parnell. Based on the conduct report, Sgt. Parnell found Mr. Robison guilty of lying.  Mr. Robison admitted to Sgt. Parnell that he had lied to Mr. Coey about not feeling threatened by Mr. Posey. Mr. Robison stood by his story about the lock.  Sgt. Parnell's report does not distinguish between the issue of Mr. Robison's fear of Mr. Posey and the issue of the broken lock.

Defendants assert that these undisputed facts demonstrate that Mr. Robison rightfully was found guilty of lying.  They explain that, because lying is a violation of the inmate rules of conduct and these rules are valid prison regulations, this takes Mr. Robison's statements to Mr. Blakeman out of the realm of protected activity.  Without proof that he was engaged in protected activity, they argue that Mr. Robison's retaliation claim fails.  Further, they contend that Mr. Robison would have been found guilty of lying based on the information in the conduct report regardless of whether he had told the truth about the lock.

Mr. Robison contends that his claim does not fail for two reasons.  First, he explains that, while he admittedly lied, he did so only to Mr. Coey in the course of Mr. Coey's investigation, and that is not the investigation that forms the basis of the retaliation claim, it is the statements he made in the course of Mr. Blakeman's investigation, and those statements were all true.  Further, Mr. Robison insists that he had no choice but to lie to Mr. Coey.  That is, he explains that he had to disavow his truthful statements about being afraid of Mr.

Posey, when confronted by Mr. Coey, in order to protect himself from Mr. Coey and Mr. Posey.  Because, from his perspective the statements regarding the lock are true, he could only have been found guilty of lying in retaliation for having made them.  In further, support of his position, Mr. Robison relies on Sgt. Parnell's statement in his affidavit that, based on his experience at CCI, he found Mr. Robison's statements about the lock to lack credibility.  Mr. Robison suggests that this statement indicates that Sgt. Parnell found him guilty of lying solely on the basis of his statements about the lock.

While the Court previously explained that the Court of Appeals has acknowledged that a prisoner has a right to cooperate in an internal prison investigation, see Griffin v. Berghuis, 563 Fed.Appx. 411, 421 (6th Cir. 2014), it is well-settled that, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one."  Thaddeus-X, 175 F.3d at 395.

Mr. Robison was found guilty of having violated Rule 27 of Ohio Administrative Code 5120-9-06, Inmate rules of conduct.  That regulation provides:

> (A) The disciplinary violations defined by this rule shall address acts that constitute an immediate and direct threat to the security or orderly operation of the institution, or to the safety of its staff, visitors and inmates, (including the inmate who has violated the rule,) as well as other violations of institutional or departmental rules and regulations.
> ...
> (27) Giving false information or lying to departmental employees.

Mr. Robison does not challenge the legitimacy of this prison regulation.  Further, Mr. Robison admits that he told Mr. Coey that he had given Mr. Blakeman false information regarding his fear of Mr. Posey.  Stated another way, Mr. Robison told Mr. Coey

-15-

that he had provided a statement to Mr. Blakeman in a way that violated a legitimate prison regulation. That Mr. Robison later has continually contended that he was actually truthful with Mr. Blakeman, but not Mr. Coey, does not change this fact.

There may well be a genuine disagreement here about whether Mr. Coey wrote his conduct report in order to punish Mr. Robison for "ratting out" Mr. Posey. But that report, standing alone, did not result in any adverse action. The adverse action came only after Sgt. Parnell concluded that, at some point in this entire series of events, Mr. Robison lied to a staff member about something. This fact is undisputed. Lying is not protected conduct. As defendants note, "[a] finding of guilt based upon some evidence of a violation of prison rules, 'essentially checkmates [a] retaliation claim.'" Jackson v. Madery, 158 Fed. Appx. 656, 662 (6th Cir. 2005), quoting Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994). Here no genuine issue exists as to the fact that Sgt. Parnell found Mr. Robison guilty of lying based on "some evidence." Mr. Robison's attempt to compartmentalize his statements to Mr. Blakeman in an effort to overcome this conclusion is unavailing.

For all of these reasons, the Court will recommend that the defendants' motion for summary judgment as to Mr. Robison's initial retaliation claim be granted. Because the motion for summary judgment does not address Mr. Robison's additional retaliation claim as set forth in the amended complaint, that claim is not addressed by this Report and Recommendation and remains pending.

## VI.  Remaining Motions

Mr. Robison has filed three discovery motions including a motion for supplemental discovery and two motions to compel (Docs. 64 and 71). Mr. Robison's first motion seeks transcripts from depositions he believes defendants conducted. Defendants

responded to this motion stating that they have not conducted any depositions in this case. They explain that they spoke with Mr. Blakeman and Mr. Wolfenbarger but did not depose them. Defendants were well within their rights to do so. See, e.g., Thomas v. 1156729 Ontario Inc., 979 F.Supp.2d 780, 786 (E.D. Mich. 2013) (witness interviews are routine components of case preparation). Based on defendants' representation, the motion for supplemental discovery will be denied.

In his first motion to compel, Mr. Robison seeks answers to the second set of interrogatories directed to Mr. Posey. Defendants responded contending that his responses were not due until four days after discovery closed, that Mr. Robison failed to attach certification demonstrating his extrajudicial efforts to resolve the issue, and that Mr. Robison has not demonstrated the relevance of these interrogatories. Mr. Robison filed a reply. Mr. Robison has not attached to his motion a copy of his second set of interrogatories. As a result, the Court cannot determine whether the interrogatories relate to the claim that is the subject of this order or the claim raised in the amended complaint. Consequently, the Court will deny this motion to compel without prejudice. See Peterson v. Kramer, 2015 WL 1954615, *3 (S.D. Ohio Apr. 29, 2015).

In his second motion to compel, Mr. Robison again seeks a copy of the alleged NEXUS report. Mr. Robison previously filed a similar motion that was denied by the Court as premature. According to the current motion, on April 4, 2016, Warden Jenkins responded to Mr. Robison's kite regarding the NEXUS report by stating that "[t]he information you seek pertaining to the 'nexus' documentation is not public record and cannot be provided at this time. Upon a request from the courts the request will be processed accordingly." Based on this response, Mr. Robison challenges defense counsel's representations in response to his

document request that neither the defendants nor CCI have the requested NEXUS report.  In response, defendants contend that a diligent search was made for such a document and no such record could be found.  They note that this search was done after Warden Jenkins' response to Mr. Robison's kite.

Defendants stand by their consistent representations that no such report exists and assert that they cannot be compelled to produce non-existent documents.  The Court agrees.  See, e.g., Starbuzz Tobacco, Inc. v. Al-Amir, Inc., 2010 WL 4774077, *2 (E.D. Mich. Nov. 16, 2010)( "The Court cannot compel the production of documents based solely on the opposing party's speculation and belief that responsive documents exist and that the producing party is withholding them").  Consequently, the second motion to compel will be denied.

## VII.  Recommendation and Order

For the reasons stated above, it is recommended that the motion for summary judgment (Doc. 61) be granted as to the initial retaliation claim only.  Further, Mr. Robison's discovery motions (Docs. 62, 64, and 71) are denied.  If defendants wish to address the remaining claim by way of a summary judgment motion, they shall do so by March 1, 2017.

## PROCEDURE ON OBJECTIONS TO THE REPORT AND RECOMMENDATION

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein,

may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de</u> <u>novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir.1981).

<u>MOTION FOR RECONSIDERATION OF ORDER</u>

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a).  The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp  
United States Magistrate Judge